No. 32,955

THE STATE OF KANSAS, ex rel. VERNON C. ROSENSTAHL, as County Attorney of Labette County, *Appellee,* v. A. M. STOREY, as County Clerk of Labette County, *Appellee,* THE PRETENDED JOINT RURAL HIGH-SCHOOL DISTRICT NUMBER 2 OF THE COUNTIES OF CRAWFORD, CHEROKEE, NEOSHO AND LABETTE, D. T. NEHER, as Pretended Director, D. B. McKEE, as Pretended Clerk, and HARVE LONG, as Pretended Treasurer, etc., *Appellants.*

(58 P. 2d 1090)

Opinion filed July 3, 1936.

*A. B. Keller, George R. Malcolm* and *C. A. Burnett,* all of Pittsburg, for the appellants.

*Vernon C. Rosenstahl,* county attorney, *Elmer C. Clark,* of Oswego, *Kirke C. Veeder,* of Independence, and *Charles D. Welch,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action in the name of the state on the relation of the county attorney of Labette county to enjoin the county clerk of that county from extending upon the tax roll a tax levy of two mills for general purposes made by the school board of Joint Rural High School District No. 2 of Crawford, Cherokee, Neosho and Labette counties, on the ground that the organization of the school district was invalid. The county clerk answered admitting formal allegations of the petition, pleaded his lack of knowledge respecting other facts alleged and of the law governing the issues, and prayed for a full hearing on the merits as presented by plaintiff and other defendants, and that the court advise him as to his duties in the premises. The other defendants were the school district and its officers. They answered, setting up the steps taken in the organization of the school district, alleged they were in conformity with law, and denied the illegality of the tax levy. The trial court made findings of fact and conclusions of law and rendered judgment for plaintiff. The defendants, other than the county clerk, have appealed.

The facts disclosed by the record, so far as they are necessary to disclose the legal questions presented, may be stated briefly as follows: The city of McCune in Crawford county is a city of the third class with a population of more than 500. The common school district in which the city is located had built a high-school building, and has endeavored to conduct a high school which has an attendance of about 120 pupils. It found itself embarrassed financially to conduct a grade-A high school. Early in May, 1935, proceedings were inaugurated under R. S. 72-3501 *et seq.,* as amended, for the formation of a joint rural high-school district, the plan being to use the high-school building at McCune. The proposed new rural high-school district comprised parts of four counties and had an area of 77 square miles, in which there was property of the aggregate assessed value of $6,172,858. The approximate area and the assessed value of property in each of the counties being, in Crawford county 50½ square miles, $1,302,060; in Cherokee county, 14½ square miles, $246,079; in Neosho, 1 square mile, $14,035; and in Labette county, 11 square miles, $4,610,684. Appropriate petitions,

properly signed, for the organization of the proposed rural high-school district, were duly presented to the respective county superintendents and boards of county commissioners of each of the counties and were approved by those officers in the counties of Crawford, Cherokee and Neosho, but they were disapproved by those officers in the county of Labette. Thereupon a petition was presented to the state superintendent of public instruction requesting his approval of the formation of the proposed rural high-school district and of its boundaries. After giving notice to all interested parties, and after an extended hearing at which the parties appeared, and after an investigation, the state superintendent of public instruction approved the formation of a rural high-school district and the proposed boundaries thereof. Thereafter, at an election held for that purpose, a large majority of the voters within the proposed district voted in favor of the formation of the district, and at a subsequent election a school board was chosen. Thereafter, and in due time, the school board made its tax levy for general purposes and certified the same to the county clerk of each of the four counties. This levy was duly extended on the appropriate tax rolls by the county clerks of the three counties of Crawford, Cherokee and Neosho, and would have been so extended by the county clerk of Labette county had it not been for the bringing of this action. Labette county has an excellent community high school in which instruction is given in all subjects ordinarily taught in high schools and in many others. It is expensive to maintain it at the high standard at which it is maintained. The formation of the new Joint Rural High School District No. 2 of the counties of Crawford, Cherokee, Neosho and Labette would take from the Labette county community high school approximately one fourth of the assessed value of its property, and, plaintiff contends, would seriously impair the efficiency and the high standard of work of that school. This action is prompted by that contention and the further contention that the statutes under which the new joint rural high-school district was organized are invalid.

While the record before us exhaustively sets forth each of the steps taken in the organization of the new joint rural high-school district we need not set these out at length, for there is no contention that the steps taken do not conform fully, or at least substantially, with our statutes governing the organization of such a school district. Plaintiff's contention is that the statutes are unconstitutional

and invalid, hence that the pretended organization of the school district was invalid. The judgment of the trial court was in harmony with that view.

The trial court held, as a matter of law, that the proviso of R. S. 1933 Supp. 72-3504, while general legislation in form, is special in its application, in violation of section 17 of article 2 of our constitution, and therefore void. This section reads:

"If the territory comprising the proposed rural high-school district shall contain any incorporated city with a population of more than 500, the election provided for in section 2 of this act, as amended, shall not be called unless petitions shall be presented to the county commissioners signed by two fifths of the legal electors residing in said city and by two fifths of the legal electors residing in said territory of the proposed rural high-school district outside of the city; and when such petitions shall be presented, the county commissioners shall call an election as provided in section 2 of this act, and the vote in said city and in the territory outside of said city shall be taken and counted separately; and a rural high-school district shall not be formed in territory containing any incorporated city with a population of more than 500 unless the proposition to form such a high-school district and to establish a high school therein shall be favored by a majority of those voting in said city and by a majority of those voting in the territory of the proposed rural high-school district outside of said city: *Provided,* That where the territory outside any such city sought to be incorporated in the formation, organization of any such district lies in four or more counties, the provisions for separate petition and separate vote of such city and such territory outside such city shall not apply."

Section 17 of article 2 of our constitution reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of this state."

In support of the ruling of the trial court it is argued by appellee that the statute above quoted preceding the proviso, when the proposed rural high-school district contains an incorporated city of a population of more than 500, requires the vote upon the organization of the district to be taken separately in the city and in the territory outside the city, while the proviso does away with this separate vote if the proposed district includes territory in as many as four counties. It is stipulated that so far as is known only one other rural high-school district has been formed in the state in which the territory is situated in as many as four counties. It is argued that the district under consideration is perhaps the only other one

which could be formed in the state, hence that the proviso, though general in form, is special in its application. We cannot agree with this view. The court takes judicial notice of the map of the state, of the boundary lines of counties, and the location of cities. It is not difficult to look at our state map and see a number of locations where it would be possible to form a rural high-school district containing a city with more than 500 population and containing territory situated in as many as four counties. It was error to hold the proviso invalid as being special in its application. It is not contended the inhabitants of the proposed district had a constitutional right to have a separate vote in the city and in the rural portion of the territory, hence it was within the power of the legislature either to provide or not provide for such separate vote. That being true, the court should not concern itself with the distinction made by the legislature in that respect based upon whether the proposed district included territory in more or fewer than four counties. Just what prompted the legislature to make that distinction may not be clear to the court, but as the legislature might have made it either way, without violating the constitutional rights of anyone, the distinction was within the discretion of the legislature. We note in the case before us a separate vote would have made no difference, for had all the votes cast against the formation of a district been cast by those living outside of the city of McCune, still the vote outside of the city would have been favorable to the formation of the district.

The trial court also held R. S. 72-3501 and 72-3502 invalid for the reason that they attempt to delegate legislative power to the state superintendent of public instruction in violation of sections 1 and 21 of article 2 of our constitution. R. S. 72-3501 reads (we italicize the portion held invalid):

"The legal electors residing in territory containing not less than sixteen square miles shall have authority to form a rural high-school district, whose boundaries shall have been approved by the county superintendent of public instruction and by the board of county commissioners of each county in which any part of such proposed district shall be situated, *or by the state superintendent of public instruction in case the county superintendents and boards of county commissioners of two or more counties shall fail to agree on the approval of the boundaries of the proposed district,* and to establish, locate and maintain therein a rural high school as hereinafter provided."

R. S. 72-3502, in harmony with the previous section, provides further detailed steps to be taken in the formation of a rural high-school district. Our constitutional provisions the statutes were held to violate read:

"The legislative power of this state shall be vested in a house of representatives and senate." (Art. 2, § 1.)

"The legislature may confer upon tribunals transacting the county business of the several counties, such powers of local legislation and administration as it shall deem expedient." (Art. 2, § 21.)

In support of the ruling of the trial court it is argued by appellee that the legislative power of this state must be exercised by our legislature, except that it may confer powers of local legislation on boards of county commissioners; that the state superintendent of public instruction is an executive officer under our constitution (art. 1, § 1) ; that the legislature cannot confer legislative power upon an executive officer (*Oakland State Bank v. Bolin,* 141 Kan. 126, 40 P. 2d 437; *Panama Refining Co. v. Ryan,* 293 U. S. 388, 55 S. Ct. 241, 79 L. ed. 446) ; and that the prudence, desirability, or public benefit to be attained by the formation of a subdivision of the state for governmental purposes, such as a city (*Ruland v. City of Augusta,* 120 Kan. 42, 242 Pac. 456) ; or a drainage district (*Verdigris Conservancy District v. Objectors,* 131 Kan. 214, 289 Pac. 966), or a school district (*State, ex rel., v. School District,* 140 Kan. 171, 174, 24 P. 2d 102), is a legislative question and constitutionally cannot be conferred upon purely judicial or executive officers. Forceful as this argument is, it overlooks article 6 of our constitution dealing specifically with education, the pertinent portions of which read:

"The legislature shall encourage the promotion of intellectual, moral. scientific and agricultural improvement by establishing a uniform system of common schools, and schools of a higher grade, embracing normal, preparatory, collegiate and university departments." (Art. 6, § 2.)

"The state superintendent of public instruction shall have the general supervision of the . . . educational interests of the state, and perform such other duties as may be prescribed by law. . . ." (Art. 6, § 1.)

By these provisions of the constitution the legislature was required to establish a uniform system of common schools and schools of a higher grade. Realizing that many questions pertaining to educational matters naturally would arise, and which would need the attention of a competent official who could investigate and determine what is best to be done, our constitution gave to the superintendent of public instruction "the general supervision of the . . . educational interests of the state," and specifically authorized him to "perform such other duties as may be prescribed by law," without limiting those duties to such as might be classified as executive or

administrative only. He is authorized to perform any duties pertaining to the educational interests of the state which the legislature deems wise and prudent to impose upon him. Under these provisions it cannot be said that the legislature is without authority to authorize the state superintendent of public instruction to perform duties, or determine questions, with respect to the educational interests of the state which, in the general classification of powers of government, would be regarded as legislative in character.

We agree with appellee that the questions considered by the state superintendent of public instruction, as shown by his testimony, pertain to the prudence or advisability of establishing the joint rural high-school district, with its proposed boundaries, were legislative in character, but they pertained also to the educational interests of the state, and particularly to the educational interests of those who would be immediately affected by the organization of the new school district. However, his action was within the purview of the statutes, above cited, and as we have seen, our constitution authorizes the legislature to impose upon him such duties as it deemed best pertaining to the educational interests of the state.

While much more might be written there is not much else to this lawsuit. The steps taken for the formation of the joint rural high-school district were in harmony with our statutes. There is no serious contention to the contrary. In our view of the law the statutes are valid. It necessarily follows that the tax levy sought to be enjoined was a valid levy.

The judgment of the court below must be reversed with directions that the court instruct the county clerk of Labette county to extend the levy upon the proper tax rolls of his county. It is so ordered.