No. 36,486

THE STATE OF KANSAS, ex rel. WILLIAM N. TICE, County Attorney of Mitchell County, et al., *Plaintiffs*, v. L. W. BROOKS, State Superintendent of Public Instruction, *Defendant*.

(163 P. 2d 414)

Opinion filed November 10, 1945.

*T. M. Metz,* of Lincoln, and *R. L. Hamilton,* of Beloit, argued the cause for the plaintiffs.

*Leon W. Lundblade,* assistant attorney general, argued the cause, and *A. B. Mitchell,* attorney general, was on the briefs for the defendant.

The opinion of the court was delivered by

SMITH, J.: This is an original action in mandamus wherein the plaintiffs ask us to order the state superintendent of public instruction to consent to the annexation of certain territory to a rural high-school district. We issued an alternative writ. The defendant filed a motion to quash. The cause was submitted on this motion. Such a motion is equivalent to a demurrer.

The action was originally brought in the name of Joint Rural High School District M & L No. 1. It should be noted that this

district maintains a rural high school at Hunter, a town located within a mile of the south border of Mitchell county. After the formal allegations the petition alleged that petitions and enumerations were presented to the board requesting the annexation to the district of certain territory; that the board examined the petitions, found that a majority of the electors residing in the territory had signed them and approved the annexation of the territory. The description of the territory which it was sought to have the district annex showing that it comprised land partly in Mitchell and partly in Lincoln county was then set out. The petition then alleged that the annexation petitions were signed by seventy-one percent of the electors residing in the territory; that about eighty-three percent of the electors residing in that part of the territory which was in Mitchell county signed the annexation petitions and about sixty-five percent of those who resided in Lincoln county signed them. The petition then alleged that the annexation petitions and enumerations were presented to the county superintendent of Mitchell county who approved the annexation; that the petitions and enumerations, together with the approval of the board and the approval of the county superintendent of Mitchell county, were presented to the county superintendent of Lincoln county and that official refused to consent to the annexation. The petition then alleged that in due time the plaintiffs appealed to the state superintendent of public instruction and that official conducted a hearing and announced that he would disregard the formalities and that no record would be made of the proceedings; that the witnesses would make their statements free from questioning by any attorney and that he would accept letters or written statements of a representative of any witness not present although plaintiffs had objected to the use of any affidavits or writings; that the original petitions and enumerations were submitted to the state superintendent; also the consent of the county superintendent of Mitchell county and the refusal of the county superintendent of Lincoln county; that it was shown that one hundred and nine students had attended Hunter Rural High School from the territory in question since its beginning; that last year there were six high-school students from the proposed territory in Mitchell county and thirteen from the territory proposed in Lincoln county; that one-third of all the students in the high school came from the territory which it was proposed to annex. The petition then alleged

there was no objection by any one in Lincoln county except from one township; that the proposed territory extended seven miles south of Hunter to within nine miles of Sylvan Grove and was properly within the Hunter Rural High School District. The petition then contained the following allegation:

"A copy of the decision of the State Superintendent is hereto attached, that the Court may see the reasoning whereby he reached his decision and the plaintiffs say that his said decision is not in accordance with law. It is inaccurate and speculative and not based on facts. He discusses the minimum size of a Rural High School district, but he fails to mention the fact that this same law requires a two million dollar valuation or if there is a High School building, a one million, two hundred and fifty thousand dollar valuation, all of which has nothing to do with the law of this case."

The petition then contained allegations in which plaintiffs objected to the manner in which the state superintendent arrived at the conclusion reached and refers to G. S. 1935, 72-3514, and alleged that the duty of the state superintendent thereunder upon appeal was ministerial and the superintendent had no discretionary or judicial powers; that the only duty the county superintendent had was first to determine that the proposed territory was adjacent to a rural high-school district and then determine if a majority of the resident electors had signed petitions for annexation; that plaintiffs had no adequate remedy at law. At the time the state superintendent made his decision to refuse to consent to this annexation he wrote a memorandum opinion. A copy of this opinion was attached to the petition.

When the suit was filed we issued an alternative writ. The defendant filed a motion to quash it on the grounds that the plaintiffs had no legal capacity to sue; that neither the writ nor the motion therefor stated facts showing that the plaintiffs were entitled to relief and that the action was brought for the purpose of compelling the defendant to perform discretionary acts. Before the case came on for final submission to the court on proper motion the state was made a party on motion of the plaintiffs endorsed by the county attorney of Mitchell county so the question of the legal capacity of the original plaintiffs to bring the action went out of the case.

The section of the statute pursuant to which these proceedings were had is G. S. 1935, 72-3514. That section provides, in part, as follows:

"Territory outside the limits of any rural high-school district, but adjacent

thereto, may be attached to such high-school district for high-school purposes, upon application being made to the rural high-school board by a majority of the electors of such adjacent territory, and upon the approval of said rural high-school board and the consent of the county superintendent of public instruction: *Provided,* That an appeal may be taken from the decision of the county superintendent to the board of county commissioners, if such property proposed to be attached is within one county, and to the state superintendent of public instruction if same be within two or more counties, whose respective decision in either case will be final . . ."

It will be seen that this statute provides for the annexation of new territory to a rural high-school district under certain conditions. Where the territory is all in one county annexation is brought about by securing petitions signed by a majority of the electors of the proposed territory followed with the approval of the rural high-school board and the consent of the county superintendent of public instruction. The statute, it will be noted, then provides for an appeal to the county commissioners. Obviously this means an appeal by either party, that is, by the people who want to see the territory annexed or by the people opposed to it. The lawmakers knew that there were certain situations such as the one we have here where the territory which some district wished to annex would be in two or more counties. It would hardly do to have the appeal lie to the county commissioners of one of these counties so the legislature provided that the appeal should lie to the state superintendent of public instruction in cases where the territory is within two or more counties, as is the case here.

Plaintiffs argue that the state superintendent had no authority to exercise any discretion in the matter; that the matter of approving the annexation of the territory was purely a ministerial act and that once compliance with the statute was shown, that is, that there was a sufficient number of signatures on the petitions and the territory lay outside of any regularly organized district, then there was nothing for the county superintendent in the first instance or the state superintendent on appeal to do but approve the annexation. That argument, however, runs counter to a reasonable interpretation of the language of this act. In the first place, the act provides that territory may be attached upon application being made by the majority of the electors of the proposed territory but the statute goes on and makes an additional condition, that there must be the approval of the rural high-school board. No one would argue but that there would have to be the approval of the high-school board as

well as the proper number of signatures. The statute goes on, however, in the very next clause and says "And the consent of the county superintendent of public instruction." We find then three provisions that must be met, that is, the signatures of the electors, the approval of the board and the consent of the county superintendent. It is pretty hard to see why the lawmakers provided that the county superintendent had to consent if his action was purely ministerial. Such a construction renders the use of the word "consent" meaningless. An appeal may be taken from the decision of the county superintendent. Now if an appeal may be taken, why would the statute provide for the consent of the county superintendent and then provide that an appeal could be taken from his decision if his act were purely ministerial? If after the board approved or refused its approval the rest of the steps were ministerial there would not be any reason at all for providing for an appeal. The act provides for an appeal to the board of county commissioners if the property is located in one district and to the state superintendent of public instruction if the territory is in two or more counties. Furthermore, the lawmakers saw fit to provide that in either case the decision of the board of county commissioners or the state superintendent of public instruction should be final. It is hard to see why the decision of the state superintendent would be final if it was intended that his action should be purely ministerial, as urged by plaintiffs here.

The plaintiffs cite and rely on *State, ex rel., v. Mowry,* 119 Kan. 74, 237 Pac. 918. In that case a county superintendent had attempted to detach territory from one district and attach it to another under the provisions of G. S. 1935, 72-3509. Without going into the facts at length it is perfectly clear that the decision of the county superintendent in that case was set aside because the court held that his acts were actuated by malice and so arbitrary and capricious as to be tantamount to fraud. On account of the arguments of plaintiffs in this respect the allegations of the petition here have been set out somewhat at length. We have examined these allegations and nowhere in the petition do the plaintiffs allege either malice or arbitrary or capricious conduct on the part of the state superintendent.

There are many decisions to the effect that the decisions of an administrative officer or board may be set aside by the courts when he is guilty of being capricious or acting in an arbitrary manner

or actuated by malice. We do not have such a case as that here, however. The most that the petition alleges is that the state superintendent used bad reasoning in reaching his result and reached the wrong legal conclusion.

Plaintiffs ask us to set aside the action of the state superintendent of public instruction because he examined writings of witnesses who were not present and did not permit the witnesses who were there to be cross-examined by counsel who represented the proponents of the adoption of the proposed territory and because he reached a different conclusion than counsel for plaintiffs think should have been reached from the evidence and facts that were considered by the superintendent. Once we have reached the conclusion that the use of the words "approval" and "consent" as used in the section under consideration vests the officers referred to with discretionary powers we are led to the conclusion that we will not disturb the decision of the state superintendent of public instruction. In *State, ex rel., v. Storey*, 144 Kan. 311, 58 P. 2d 1090, we considered G. S. 1935, 72-3501 and 72-3502. G. S. 1935, 72-3501, conferred on the state superintendent of public instruction the power to approve or disapprove the organization of a proposed rural high-school district where the land lay in two or more counties. The trial court had held that this statute was unconstitutional because it conferred on the state superintendent legislative power. We pointed out that the formation of school districts was a governmental function which was properly under the supervision of the state superintendent of public instruction. See article 6, section 2 and article 6, section 1 of the state constitution. In cases where boards and officials are charged with the duty of investigating and determining what is best to be done under a particular situation the tribunal or official is not required to conduct the examination into the matter under the strict rules of evidence that are required for courts. In that case we said:

"We agree with appellee that the questions considered by the state superintendent of public instruction, as shown by his testimony, pertain to the prudence or advisability of establishing the joint rural high-school district, with its proposed boundaries, were legislative in character, but they pertained also to the educational interests of the state, and particularly to the educational interests of those who would be immediately affected by the organization of the new school district."

The statement applies with equal force to this case. The state superintendent of public instruction is charged with the duty of

general supervision over the educational system of the state. To hold that the question of the advisability of consenting or not consenting to the annexation of certain territory by a rural high-school district could be tried out in courts after the state superintendent had passed upon it would be to render meaningless the language "whose decision in either case will be final." There is a reason why that should be the case. The state superintendent is better equipped to ascertain what is good for the particular school district than a court would be. We find upon careful examination of the petition and the alternative writ of mandamus that it does not state facts sufficient to warrant us in ordering the state superintendent to consent to the annexation of this territory. Therefore, the motion of the defendant to quash the alternative writ will be sustained and judgment entered in his favor. It is so ordered.