No. 45,238

R. E. FRANSHAM, FRED L. HENDERSON, WILLIAM D. WRIGHT, CLYDE CAMPBELL, VOIGHT B. TRENT, and G. A. KAMERICK, *Appellants*, v. JOSEPH H. McDOWELL, MAYOR OF THE CITY OF KANSAS CITY, KANSAS: EARL B. SWARNER, FINANCE COMMISSIONER OF THE CITY OF KANSAS CITY, KANSAS, and JOSEPH P. REGAN, STREET COMMISSIONER OF THE CITY OF KANSAS CITY, KANSAS, *Appellees.*

(451 P. 2d 131)

Opinion filed March 8, 1969.

*John H. Fields,* of Kansas City, argued the cause, and *David W. Carson,* of Kansas City, was with him on the briefs for the appellants.

*Blake Williamson,* and *Edward H. Powers,* both of Kansas City, argued the cause, and *C. W. Brenneisen, Jr.,* City Attorney, and *Joseph A. Bukaty,* Assistant City Attorney, were with them on the briefs for appellees. *James B. Flack,* of Kansas City, of counsel.

The opinion of the court was delivered by

KAUL, J.: The plaintiffs-appellants describe themselves as residents and taxpayers of the City of Kansas City, Kansas, in their petition and set out three causes of action against defendants-appellees, Joseph H. McDowell, Earl B. Swarner and Joseph P. Regan, respectively, the Mayor, Finance Commissioner and Street Commissioner of the City of Kansas City, Kansas. Issues were joined by the defendants' answer.

Defendants allege that plaintiffs failed to state a claim against defendants upon which relief could be granted and that plaintiffs have no capacity to sue. Specific answers to the allegations of the three counts of the petition were also incorporated in the answer.

Depositions of three plaintiffs and two defendants were taken by the opposing parties.

Thereafter, a motion by plaintiffs for summary judgment as to Counts II and III and a motion by defendants to dismiss as to all counts were heard by the trial court. Plaintiffs' motion for summary

judgment was overruled. As authorized by K. S. A. 60-212 (*b*) (amended by Laws of 1965, Chapter 354, Section 1, now K. S. A. 1968 Supp. 60-212 [*b*]), defendants' motion to dismiss apparently was treated as a motion for summary judgment and sustained as to all three counts of plaintiffs' petition.

The trial court filed a memorandum decision which reads in pertinent part as follows:

"1. That with respect to each of these counts, there is a failure to state a claim upon which relief can be granted.

"2. That there is no authority in the plaintiffs or any of them as taxpayers or otherwise, to maintain the action with respect to any of the three counts.

"3. None of the plaintiffs have any special interest as private citizens or taxpayers with respect to the matters alleged in any one of the three counts which are not enjoyed by the public generally.

"With respect to Count I, there was some indication on the part of the plaintiffs that there should be further discovery before passing upon the defendants' motion to dismiss. The court finds that it is apparent on the face of the petition that further discovery would not supply any additional facts which could possibly add to the merit of any claim on the part of these plaintiffs.

"The motion of the defendants to dismiss is sustained, and the motion for summary judgment filed on behalf of the plaintiffs with respect to Counts II and III is overruled."

Thereafter, plaintiffs perfected this appeal urging as error each finding of the trial court and as a fourth point claim error in overruling plaintiffs' motion for an order requiring defendants to pay for that portion of the record on appeal unnecessarily included by them in the joint designation agreed to by the parties.

In Count I plaintiffs allege defendants willfully, wantonly and fraudulently used tax money for their own gain with respect to the institution by the city, as sponsor, of a summer program of the Neighborhood Youth Corps. The program was operated for twelve weeks during June, July and August of 1965, as a result of a contract between the City and the United States Department of Labor, authorized by the Economic Opportunity Act, enacted by Congress in 1964.

Plaintiffs allege defendants appointed Frank Cottita to administer the youth program and that as administrator, under the direction and supervision of defendants, he put seventy-seven ineligible persons on the payroll for the purpose of strengthening defendants' political machine and for defendants' own political aggrandizement. Plaintiffs further allege in Count I that an investigation by the Federal Government revealed the seventy-seven persons to be ineligible

by reason of failure to qualify as impoverished persons and, as a result of the investigation, defendants agreed to pay back some $7,300 to the Federal Government out of city tax funds.

As to Count I plaintiffs pray that defendants be required to pay back $7,300 and be assessed $25,000 each for exemplary damages to be paid to the city treasury.

Counts II and III of the petition allege defendants unlawfully adopted charter ordinances concerning salaries and pensions.

In Count II plaintiffs pray that defendants be required to pay back to the city treasury the amounts collected due to raises in salaries resulting from the alleged unlawful adoption of a charter ordinance raising their salaries.

In Count III plaintiffs seek to enjoin defendants from collecting their pensions and also pray that those portions of the ordinance creating pensions for elected officials be declared unconstitutional.

In all three counts, plaintiffs rely primarily on alleged violations of specific statutes. Although plaintiffs pray for relief in the form of damages, recovery of money and injunction, the allegations of the petition force the conclusion that the action generally is in the nature of quo warranto seeking to oust the defendants from exercising alleged unwarranted power. In their brief plaintiffs are indefinite as to their position. They assert capacity to sue under either, or both, quo warranto (K. S. A. 60-1203) or as aggrieved taxpayers (K. S. A. 60-907).

We shall consider first whether there was a failure to state a claim upon which relief could be granted in Counts I and II.

Plaintiffs' argue that, as a general rule, a public official is liable for moneys fraudulently misapplied, misappropriated, or lost. (43 Am. Jur., Public Officers, § 308, pp. 112, 113.) They cite the case of *Joint Consolidated School Dist. No. 2 v. Johnson,* 163 Kan. 202, 181 P. 2d 504, to show that the general rule has been recognized and applied in Kansas. Plaintiffs are entirely correct in this assertion, however, the question here is whether the proper remedy has been pursued.

The *Johnson* case, cited by plaintiffs, involves an action filed pursuant to the provisions of G. S. 1943 Supp. 72-1016 (now K. S. A. 72-1016). The statute mentioned provides a means for recovery in the event of the breach of any condition of the bond of a treasurer of a common-school district. The statute specifically provides that the county superintendent shall, or any qualified voter of the district may, institute an action to recover on the bond if the director

of the school district shall neglect or refuse to prosecute the action. In the *Johnson* case it was held that, notwithstanding the rule which precludes individuals generally from maintaining suits questioning the action of public officials, there can be no doubt but that the legislature has power to grant them that privilege either singly or collectively, as was done in G. S. 1943 Supp. 72-1016. G. S. 1935, 60-1121 (now K. S. A. 60-907) providing injunctive relief against illegal tax levies and other illegal acts of public official is pointed out as a further illustration of the right of the legislature to carve out an exception to the general rule.

The holding in *Johnson,* based upon the specific statutory authorization given a private citizen to maintain an action to recover moneys for the benefit of a school district, lends no support to plaintiffs with respect to Counts I and II.

Plaintiffs rely primarily on the provisions of K. S. A. 13-532 as establishing a basis for their causes of action in Counts I and II.

K. S. A. 13-532 reads as follows:

"All elected and appointed officers and employees of the city shall be personally liable to such city for the proper performance of his or her duty, as prescribed by this act and the ordinances of the city, or for the creation of any indebtedness contrary to the provisions of this act or the ordinances of the city, and for the misapplication of any funds, thing of value or property of such city committed to his or her care, or subject to his or her disposal, by vote or otherwise; and it shall be the duty of the city attorney to prosecute all violations of this section, in the name and on behalf of said city, on the written request of any three citizens and taxpayers of said city. Every officer who shall, with intent to defraud the city, approve, allow or pay any demand on the treasury not authorized by this act or by ordinance shall be liable to the city individually and on his official bond for the amount of the demand so illegally approved, allowed, or paid."

A reading of the statute reveals a well-defined procedure for the recovery on behalf of a city of funds misapplied by a city official or employee. A remedy for the private citizen is provided by the mandatory duty imposed on the city attorney to prosecute an action on the written request of any three citizens who are taxpayers of the city. There is no allegation here of any request having been made of the city attorney, nor is any evidence to that effect adduced from depositions before the court. Plaintiffs suggest in their brief the city attorney should be prosecuting an action against, rather than defending, the defendant city officials. If the city attorney has failed to perform a statutory duty, plaintiffs have a remedy other than that sought to be maintained in this action.

From what has been said it is clear that plaintiffs have failed in Counts I and II to state a claim upon which relief could be granted based on the provisions of 13-532, *supra.*

In Count II of their petition plaintiffs also allege that defendants, in adopting an ordinance providing an increase in their salaries during the term of office for which they had been elected, violated the provisions of K. S. A. 13-1802. The caption and text read as follows:

"**Holding other office.** No member of the board of commissioners, or the mayor, shall hold any office of profit or trust under the laws of any state or the United States, or hold any county or other city office; nor shall the mayor or any commissioner ever be elected or appointed to any office created by, or the compensation of which was increased or fixed by, the board of commissioners, while he was a member thereof, until after the expiration of at least two years after he has ceased to be a member of said board."

The purpose of this statute is twofold. First, it prohibits the mayor and commissioners from holding other public offices or positions. Second, it prohibits them from holding any office or position created by them, or a position for which the salary was increased by them, until the expiration of two years after serving as mayor or commissioners. There is nothing in the statute which prohibits the fixing or changing of salaries, either by raising or lowering, during the term of office then being served. Succeeding sections, K. S. A. 13-1803 and 1804, provide for the salaries of mayors and commissioners according to the classification and population of the various cities. With respect to smaller cities salaries are fixed by the provisions of 13-1803; as to larger cities only a maximum compensation for mayors and commissioners is fixed by 13-1803 and 13-1804. It follows that in the case of larger cities, such as Kansas City, Kansas, it is necessary that salaries, within the appropriate statutory limitation, be fixed by ordinances.

In the allegations of Count II we find no violation of K. S. A. 13-1802 which gives rise to a claim upon which relief could be granted as sought by plaintiffs.

In Count III plaintiffs again allege defendants violated the provisions of K. S. A. 13-1802 by adopting an ordinance providing a lifetime pension for themselves. Plaintiffs further allege the ordinance to be unconstitutional in that taxpayers were denied due process of law in being deprived of an opportunity to vote on the question.

In their answer defendants explain that the two Charter Ordi-

nances (Nos. 3 and 4) attacked were amendments to the old city pension system, created and authorized by the provisions of Laws of 1939, Chapter 121, Section 1 (now K. S. A. 13-1497). Defendants point out that the old pension system was frozen in 1956 and since then new employees are enrolled in the Kansas Public Employees Retirement System rather than the old city pension system. The amendments to the old city pension system, contained in Charter Ordinances Nos. 3 and 4, applied to all city officers and employees (74) who were under the old city pension system. Defendants further allege the old city pension system is sound and similar to other municipal pension programs and that there is no threat of a drain of city funds by reason thereof, as claimed by plaintiffs. The charter ordinances in question were attached to the answer as exhibits.

As we have pointed out, K. S. A. 13-1802 prohibits mayors and commissioners from holding other public offices or positions while in office or from occupying, within two years, positions created by them, while serving as mayor or commissioners. We fail to see how the adoption of the ordinances in question falls within the prohibitions of 13-1802.

Plaintiffs further allege a deprivation of constitutional due process in the adoption of the ordinances attacked in Counts II and III.

The ordinances dealing with salaries and pensions were charter ordinances authorized by Art. 12, Sec. 5 [Cities' powers of home rule] of the Constitution of the State of Kansas. The section referred to prescribes a procedure for a referendum on any charter ordinance on petition of ten percent of the electors of the city. (Art. 12, Sec. 5 [3].) No contention is made that the ordinances were not published in conformance with constitutional requirements. Apparently, no effort was made by plaintiffs or any other taxpayers to seek a referendum on the ordinances in question. No justifiable issue involving constitutional due process is made out by the allegations in either Counts II or III.

Our conclusion that plaintiffs have failed to state a claim in any of the three counts in their petition, upon which relief could be granted, compels an affirmance of the trial court's dismissal of the action. Nevertheless, we shall briefly discuss other points raised on appeal.

We believe the trial court's finding that none of the plaintiffs has any special interest as a private citizen or taxpayer, which is not

enjoyed by the public generally, is fully supported by the record. The petition established the status of plaintiffs as merely that of residents and taxpayers of the city. In their depositions three of the plaintiffs (Fransham, Henderson and Wright), when interrogated concerning the subject, described their status as only that of tax-payers.

Capacity in quo warranto to challenge the acts of public officials does not arise from the fact a person or persons are taxpayers, the question is whether they suffered some peculiar personal injury separate and apart from all other taxpayers of the city alike.

The rule and rationale from which it stems were first stated in *Craft v. Jackson Co.,* 5 Kan. (2nd Ed.) * 518:

". . . If the injury is one that peculiarly affects a person, he has his right of action; if it affects the whole community alike, their remedy is by proceedings by the state through its appointed agencies.

". . . To allow such citizen, on his own motion, in a case where his own interests are the same as that of every other person, to interfere with and litigate the acts of public officers, and compel them to a contest in the judicial tribunals of the county over each official act, would open the door to endless litigation, and a litigation over and about uncertain and contingent rights; for though the plaintiff is a tax-payer now, he may not be when the tax to pay these claims is levied. His interests may never be affected, nor does the peti-tion show that they necessarily ever will be.

. . . . . . . . . . . . . .

". . . the private citizen, as such, cannot sue in his own name for * pub-lic injuries where his rights and interests are the same as those of every other member of the community." (pp. * 521, * 522, * 524 and * 525.)

The rule has been consistently followed by this court down through *Rowlands v. State,* 187 Kan. 174, 354 P. 2d 674, which sets out a history of the rule and a series of adhering cases commencing with the decision in *Craft.* The rule was most recently recognized in *Babcock v. City of Kansas City,* 197 Kan. 610, 419 P. 2d 882, and *Tripp v. Board of County Commissioners,* 188 Kan. 438, 362 P. 2d 612.

Plaintiffs contend the rule has been altered to broaden the ca-pacity of private individuals in quo warranto by the addition in K. S. A. 60-1203 of the words "resolution" and "ordinance" which were not included in the prior statute. (G. S. 1949, 60-1603.) The effect of the rearrangement of statutory language and the addition of the words "resolution" and "ordinance" in 60-1203, *supra,* was considered in *Babcock v. City of Kansas City,* supra.

In *Babcock* annexation ordinances were challenged. The action was held to be in effect an attack on the corporate integrity of the

city and as such it was beyond the power of a private individual to maintain. Plaintiffs argue that, since the fact of corporate organization is admitted in the instant case, their right to maintain the action may be inferred from the holding in *Babcock*. The *Babcock* case did not deal with capacity to sue arising from a special interest other than that of the community in general. As a property owner, affected by the proposed annexation, Babcock probably met this requirement. He failed because his action was construed to be an attack on corporate integrity. The addition of the words "resolution" and "ordinance" in 60-1203, *supra*, to "office, franchise or corporation," set out in the prior statute, was held only to broaden the field of the form of action and not to create any new rights in a private taxpayer. The requirement of a special interest not enjoyed by the public generally was not eliminated.

In commenting on 60-1203, *supra*, Judge Gard in his commentary says:

"It is still necessary in any event that a private person be able to show that he has a special and peculiar interest and right (or that there has been an invasion of right) not enjoyed or suffered by the public generally. . . ." (Gard, Kansas Code of Civil Procedure, Annotated, p. 674.)

Since plaintiffs neither allege nor make any claim of interest other than that of the whole community they have no capacity to maintain an action in quo warranto under the provisions of 60-1203.

In Count III, as we have pointed out, the claim of plaintiffs falls because of failure to state facts establishing an unlawful act under the provisions of 13-1802, *supra*. However, if plaintiffs had met the requirement of pleading an unlawful act then, viewed in the most favorable light, the pleading in Count III may have stated a cause of action under the provisions of 60-907, *supra* (formerly G. S. 1949, 60-1121) under which private taxpayers are authorized to attack illegal levies. In considering the statute mentioned, this court has declared many times that any person may maintain an action for injunctive relief under G. S. 1949, 60-1121 (now K. S. A. 60-907) when he alleges wrongful and illegal matters which affect his pocketbook by unlawfully increasing his taxes. (See *Tripp v. Board of County Commissioners*, supra, and cases cited therein.)

Lastly, plaintiffs claim error by the trial court in overruling their motion to tax some of the expense of the record against defendants. In announcing its ruling on the motion the trial court stated:

"The court, being fully advised in the premises, finds that the parties entered into a joint stipulation for designation on the 14th day of October, 1966;

that prior to said date the court had before it plaintiffs' motion for summary judgment and defendants' motion to dismiss. Motion for summary judgment was overruled by the court, and motion to dismiss was sustained. The court having had before it all of the depositions heretofore taken prior to such ruling and were considered in such ruling, therefore, the court finds that plaintiffs' motion to tax some of the expense of the record against the defendants be and the same should be overruled."

As noted by the trial court, the record here was compiled on a joint designation of the parties. Even though some portions of the depositions included are irrelevant to the points on appeal, under the circumstances related, the trial court's ruling cannot be said to amount to an abuse of discretion.

The judgment is affirmed.

FONTRON, J., concurring: While I concur in the affirmance of the lower court's judgment, I do not wish to be understood from anything said in the opinion relative to *Babcock v. City of Kansas City*, 197 Kan. 610, 419 P. 2d 882, as agreeing with this court's decision in that case. My views concerning the interpretation of K. S. A. 60-1203 are set out in the dissenting opinion in that case commencing on page 618.

SCHROEDER, J., joins in the foregoing concurring opinion.