No. 47,389

THE STATE OF KANSAS, *ex rel.*, LEONARD J. DIX, COUNTY ATTORNEY OF ROOKS COUNTY, KANSAS, *et al.*, *Appellee and Cross-Appellants*, v. THE BOARD OF EDUCATION OF THE STATE OF KANSAS, *et al.*, *Appellants and Cross-Appellees.*

(527 P. 2d 952)

552

Opinion filed November 2, 1974.

*Earl W. Francis,* assistant attorney general, argued the cause, and *Vern Miller,* attorney general, and *Donna Heller,* assistant attorney general, were with him on the brief for the appellants and cross-appellees.

*Kenneth Clark,* of Hill City, argued the cause, and *Leonard J. Dix,* county attorney, and *Allen Shelton,* also of Hill City, were with him on the briefs for the appellee and cross-appellants.

The opinion of the court was delivered by

FROMME, J.: This is an appeal from an order which enjoined the State Board of Education from implementing its order transferring 56 sections of land from one unified school district to another in Rooks County, Kansas.

A petition to transfer the territory was filed by Unified School District No. 270 of Rooks County, the receiving district, asking that the territory be transferred from Unified School District No. 269 of Rooks County, the giving district. After notice and hearing as provided in K. S. A. 72-7108 the State Board of Education made an order transferring the 56 sections of land and ordering Unified School District No. 269, the giving district, to pay the receiving district $26,138.29 to defray the cost of education of transferred pupils during the first six months of the school year next following July 1, 1973. The order of transfer does not set forth the findings of the board which prompted the transfer except to recite that the order of transfer "is harmonious with the purposes and provisions of the school unification acts, and that such transfer is not violative of the limitations prescribed by such law."

Shortly after the order of transfer was issued the board members and patrons of Unified School District No. 269, the giving district, enlisted the aid of the county attorney of Rooks County, and an "*ex rel*" action was filed attacking the order. The State Board of Education, the Commissioner of Education, the Department of Education, and the receiving district were joined as defendants in the

action. The receiving district and the State Board of Education filed separate answers.

The petition attacked the order of transfer on several grounds, including a claim that the transfer statute was unconstitutional and a further claim that the state board acted unlawfully, unreasonably, arbitrarily, and capriciously. At a hearing on a motion for summary judgment filed by the plaintiffs the trial court entered two orders which must be examined in this appeal.

The first is an order removing from the case all plaintiffs except the county attorney, who alone was determined to have capacity to bring the action. This order was entered on oral motion made during the hearing on the motion for summary judgment. The second was an order enjoining the State Board of Education from transferring the territory and holding the transfer statute unconstitutional. The trial court set forth its reasons as follows:

"There are no standards or guidelines provided by the legislature for determining why a territory should be transferred. That legislature sets no standards whereby a parent or landowner would know the advisability or inadvisability in attempting to make it possible for his child to attend another school or for a taxpayer to know how to proceed to have his property transferred to another school. Equally important, members of school boards have no guidance in deciding whether an agreement should or should not be made with another board in the transfer of territory. The statute sets out no law to enable an attorney to advise a client or for a County Attorney or the Attorney General to advise State and county officers.

"The legislature may designate certain duties to constitutional boards but the standards and guidelines must remain with the legislature. The legislature cannot give legislative authority to the Board of Education Carte Blanche."

We will first examine the contentions of the parties as to this second order. Defendants argue the trial court erred in holding that the legislature must establish standards and guidelines for the exercise of authority delegated to a constitutional board, they argue further that sufficient standards and guidelines are present to circumscribe the authority delegated and that K. S. A. 72-7108 is not constitutionally impermissible. The plaintiff and the cross-appellants meet these arguments head-on by pointing to the Constitution of the State of Kansas, Art. 2, Sec. 1, which provides "The legislative power of this state shall be vested in a house of representatives and senate." They further argue that the legislative power delegated for transfer of territory is not circumscribed by adequate standards and guidelines and that this court should re-examine its position as to the delegation of a legislative function so as to limit any delegation of authority to administrative duties.

Let us say at the outset, the law of this state which has evolved from our cases in this area does not embrace the non-delegation doctrine urged by the appellees. The difficulty in determining what is an administrative function and what is a delegated legislative function has brought about a general trend in the law of most jurisdictions which is away from the non-delegation doctrine. (See Davis, Administrative Law Treatise, 1970 Supp., §§ 2.00-1, pp. 40, 41.) Our cases clearly recognize that the legislature may delegate a legislative function when constitutional authority for the delegation is present and the statutory delegation is circumscribed by sufficient legislative guidelines to cover the nature and extent of the legislative function intended to be delegated. We have no present intention to retreat from the position we have taken in the following cases: *State, ex rel., v. Storey,* 144 Kan. 311, 58 P. 2d 1051; *State, ex rel., v. Hines,* 163 Kan. 300, 182 P. 2d 865; *State, ex rel., v. School District,* 163 Kan. 650, 185 P. 2d 677; *School District, Joint No. 71 v. Throckmorton,* 189 Kan. 590, 370 P. 2d 89; *Tecumseh School District v. Throckmorton,* 195 Kan. 144, 403 P. 2d 102; *Board of Satanta v. Grant County Planning Board,* 195 Kan. 640, 408 P. 2d 655, cert. den. 385 U. S. 6, 17 L. Ed. 2d 6, 87 S. Ct. 50.

The establishment or creation of school districts is a function which is legislative in character and school districts being purely creatures of the legislature are subject to the legislative power to modify or dissolve. (*Tecumseh School District v. Throckmorton,* supra; Constitution of the State of Kansas, Art. 6, Sec. 1.)

Although the legislative power is vested in a house of representatives and senate by the Constitution of the State of Kansas (Art. 2, Sec. 1), the constitution further directs the legislature to provide for a state board of education and states "The state board of education shall perform such other duties as may be provided by law." (Art. 6, Sec. 2.)

In the exercise of that legislative power the house of representatives and the senate enacted into law various school unification acts providing for the organization and creation of unified school districts. The 1961 Unified School Districts Act (G. S. 1961 Supp. 72-6701, *et seq.*) was held constitutionally impermissible on the ground that the legislature had unlawfully delegated legislative power to county planning boards in violation of Art. 2, Sec. 1 of our constitution. (*School District, Joint No. 71 v. Throckmorton,* supra.) The 1961 act was repealed in 1965. (L. 1965, ch. 419, § 1.)

In 1963, the legislature again passed a school unification act providing for reorganization of the school districts of the state. The act placed the final authority for the reorganization of school districts in the state superintendent of public instruction subject to certain statutory guidelines. In *Tecumseh School District v. Throckmorton*, supra, this court examined the 1963 act and upheld it on constitutional attack against a claim of unlawful delegation of a legislative function and a further claim of vague and indefinite delegation of legislative function which made the power delegated unintelligible and incapable of proper exercise.

The *Tecumseh* case was followed shortly by *Board of Satanta v. Grant County Planning Board*, supra, which case involved a transfer of school territory approved and carried into effect by the state superintendent. In *Satanta* this court held the steps taken by the state superintendent were in harmony with the statutory requirements for the exercise of the power to transfer, which delegation of power had previously been declared constitutionally permissible in *Tecumseh*.

In the *Hines* and the *School District, Joint No. 71* cases the attempted delegation of legislative authority to reorganize schools was given to the "county superintendent" and to a "county board"; while in *Storey, Tecumseh School District*, and *Board of Satanta* cases the delegation of legislative authority was made under constitutional authority to the "state superintendent of public instruction". Art. 6, Sec. 1 of the Constitution of the State of Kansas, prior to its amendment in 1966, provided that "The state superintendent of public instruction shall have the general supervision of the common-school funds and educational interests of the state, *and perform such other duties as may be prescribed by law.* . . ." (Emphasis supplied.) This was the constitutional authority under which the state superintendent could receive authority delegated by the legislature and carry out the provisions of the reorganization laws.

This constitutional article was amended by a vote of the people at the general election on November 8, 1966. Art. 6 of the constitution now provides:

"The legislature shall provide for intellectual, educational, vocational and scientific improvement by establishing and maintaining public schools, educational institutions and related activities which may be organized and changed in such manner as may be provided by law." (§ 1.)

"(a) The legislature shall provide for a state board of education which shall have general supervision of public schools, educational institutions and all the

educational interests of the state, except educational functions delegated by law to the state board of regents. The state board of education shall perform such other duties as may be provided by law." ( § 2 [a].)

These constitutional provisions must be read in conjunction with Art. 2, Sec. 1, which vests the legislative power in the house of representatives and senate. Reference to a state superintendent of public instruction has been deleted from our constitution and in his stead we now find a state board of education with much the same function and purpose. Because of this change in the constitution the reasoning adopted by this court in the *Storey, Tecumseh School District,* and *Board of Satanta* cases now applies to the delegation of legislative power to the State Board of Education. Accordingly, under Art. 6, Sec. 1 and 2 of our constitution the State Board of Education is authorized to perform any duties pertaining to the educational interests of the state which the legislature deems wise and prudent to impose upon the board, and the legislature has authority to delegate to that board the power to perform duties which, in the general classification of powers of government, are legislative in character—such as the transfer of school district territory which will change the boundaries of school districts in the state.

Having determined that the legislature may delegate this legislative function, let us examine the statutes by which the delegation was made in order to determine if the statutory delegation of authority is sufficiently clear and definite to circumscribe the nature, extent and the manner of exercise of the legislative function so delegated.

The statutory authority for transfer appears in K. S. A. 72-7108 which had its origin in the 1963 School Unification Act ( L. 1963, ch. 393, § 25). The statute provides that transfers of territory from one unified district to another unified district shall be made (1) upon the written agreement of any two boards approved by the state board of education, or (2) upon order of the state board after petition therefor by one board and hearing thereon conducted by the state board or a hearing officer designated by it for the purpose. In the latter case notice of hearing shall be published giving a summary description of the territory proposed to be transferred. No transfer shall be made which causes any unified district to have territory which is not contiguous to the other territory of such unified district.

The parties indicate in their briefs that the limitations in this statute provide the only guidelines which circumscribe the authority

delegated. They argue the question of their sufficiency on that premise. We question that premise.

When territory is transferred the boundaries of the two districts are changed and the integrity of the districts are thus impaired. See *Babcock v. City of Kansas City*, 197 Kan. 610, Syl. ¶ 1, 419 P. 2d 882, where it is held the annexation of territory by a city is, in effect, a reorganization of the city. Uninhibited or successive transfers from one school district might well create a situation within such district which would seriously impair the ability of that district to carry on its educational mission. In such case disorganization might be the final result although not within the spirit of the school unification acts. Surely the authority delegated is not that broad.

Since K. S. A. 72-7108 had its origin in the school unification acts which contain definite guidelines for the organization of unified school districts we believe the school unification acts must be considered as an expression by the legislature of its intention, and provide guidelines for transfer of territory of unified school districts after their initial organization. When statutes are originally enacted at the same session of the legislature as parts of a general act having the common purpose of serving the educational interests of the state they are *in pari materia* and should be read together in ascertaining the legislative purposes for their adoption. In order to ascertain the legislative intent courts should not consider one isolated part of an act but are required to consider and construe all parts thereof *in pari materia*. (*Gnadt v. Durr*, 208 Kan. 783, Syl. ¶ 3, 494 P. 2d 1219; *Flowers, Administratrix v. Marshall, Administrator*, 208 Kan. 900, 494 P. 2d 1184; *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 438 P. 2d 732.)

The present school unification acts contain the following legislative declaration found in K. S. A. 72-6734:

"The legislature hereby declares that this act is passed for the general improvement of the public schools in the state of Kansas; the equalization of the benefits and burdens of education throughout the various communities in the state; to expedite the organization of public school districts of the state so as to establish a thorough and uniform system of free public schools throughout the state whereby all areas of the state are included in school districts which maintain grades one (1) through twelve (12), and kindergarten where desired; and to have a wiser use of public funds expended for the support of the public school system of the state. To these ends this act shall be liberally construed."

K. S. A. 72-6744 sets forth further guidelines for the organization of unified districts in keeping with the legislative intent expressed

in 72-6734. Under 72-6744 each proposed unified district should have an expected enrollment of 400 students in its schools in grades one through twelve. An exception to the 400 student requirement is recognized for a district having no less than 200 square miles of territory and an assessed valuation of $2,000,000.00. Consideration should be given to the grade and curriculum requirements of K. S. A. 72-8212 (formerly 72-6755) and no unified district should be organized in which it is manifestly impracticable to maintain, offer and teach the grades and units of instruction so required. All of the territory within the boundary of any city district should be included in one and only one unified district. There are other statutory guidelines in the school unification acts and the foregoing are not intended to be exhaustive or to cover every situation.

The transfer statute K. S. A. 72-7108 (b) makes reference to the school unification acts where the limitation of contiguity is placed on territory transferred. The statute thereby recognizes its own origin as a part of the overall legislative enactment, the school unification acts.

The general powers delegated to the State Board of Education by the legislature includes the authority to adopt rules and regulations not in conflict with law on all matters within its jurisdiction. (K. S. A. 72-7514.) No regulations governing the exercise of the power to transfer territory between unified school districts have been adopted. However, the lack of department regulations is not our present concern. The trial court held the delegation of legislative power to transfer school district territory constitutionally impermissible. The charges of unlawful, unreasonable, and arbitrary action by the board have not been presented to or considered by the trial court.

The transfer of territory from one unified school district to another as authorized by the legislature in K. S. A. 72-7108 is, in effect, a reorganization of the two unified school districts, and any reorganization by transfer of territory should be harmonious with the purposes and provisions of the school unification acts and not be violative of the limitations prescribed by such laws. The order of the State Board of Education now under consideration recognized this for it was so stated in the order of transfer. Adequate guidelines to carry out the legislative function delegated appear in the school unification acts. The transfer statute, K. S. A. 72-7108, is not constitutionally impermissible because of failure to circumscribe the legisla-

tive function delegated. The realm of authority to be exercised by the board is not so vague and indefinite as to be void. Accordingly, the order of the trial court declaring the statute unconstitutional and the order of transfer on which it depends void should be and the same is hereby reversed.

We turn now to the cross-appeal which concerns the order removing all plaintiffs from the action except the county attorney. The order was entered in response to an oral motion made at the hearing on the motion for summary judgment. The moving parties had previously filed answers which failed to raise any question as to the capacity of any of the plaintiffs to maintain the action. In support of the trial court's order the cross-appellees cite *Craft v. Jackson Co.*, 5 Kan. 518; *Babcock v. City of Kansas City*, supra; *Fransham v. McDowell*, 202 Kan. 604, 451 P. 2d 131; and other similar cases which question the right of a private individual to maintain such an action unless he pleads and proves a special and peculiar interest not enjoyed or suffered by the public generally.

We are of the opinion, however, that the cross-appellees waived any right to question the maintenance of the action when they answered the petition and failed to raise this issue by specific negative averment.

K. S. A. 60-209 (*a*) provides:

"Pleading special matters. (*a*) *Capacity*. It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of any party to sue or be sued in a representative capacity he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."

In *Moore v. Shanahan*, 207 Kan. 645, 486 P. 2d 506, it is said:

"Under K. S. A. 60-209 (*a*), an objection to the legal capacity of the plaintiff to sue may be taken by answer, and the defendant is required to do so by a special negative averment, or it will be waived. (*Augusta Oil Co., Inc., v. Watson*, 204 Kan. 495, 464 P. 2d 227.) See, also, 1 Vernon's Kansas Statutes Annotated [Fowks, Harvey, Thomas], Code of Civil Procedure, § 60-209 (*a*), p. 31. Moreover, the rule that this court must, on its own motion, dismiss the appeal if it appears the district court was without jurisdiction, is not applicable to the situation here presented. In the case at bar, the district court confessedly had jurisdiction of the subject matter of injunction and of the parties. The petition presented the question to be determined as an issue, and contained sufficient facts to challenge the court's attention as to its merits. The district court's conclusion did not go to its jurisdiction, but to the legal standing or capacity of the plaintiff to seek relief." (pp. 648, 649.)

The foregoing statute was not complied with and the cross-appellees waived their right to raise this issue. The order of the trial court must be reversed on cross-appeal and the parties plaintiff as originally constituted should be permitted to proceed with their case on remand.

The judgment is reversed on appeal and on cross-appeal and the case is remanded for further proceedings.

FATZER, C. J., concurring and dissenting: I concur in the court's conclusion that K. S. A. 72-7108, the transfer statute, is not unconstitutional, and the transfer order of the State Board of Education is not void for reasons stated by the district court.

I am unable to concur, however, in certain implications of the court's opinion, particularly its judgment that "the case is remanded for further proceedings" as stated in the last paragraph of the opinion. While the purpose of remanding the case for "further proceedings" is not stated in the opinion, such proceedings presumably are to determine whether the challenged order is "unlawful," "unreasonable," or "arbitrary." As I read the majority opinion, this court now proposes to have the district court test the validity of the transfer order utilizing a standard different from that which it would apply had the 56 sections of land been transferred by act of the Legislature.

In my judgment such a difference is unjustified and any remand of the transfer order to the district court for further consideration as to its reasonableness is clearly unwarranted.

We agree the organization of school districts and the reorganization occasioned by the transfer of territory from one district to another are legislative functions, entrusted by the Constitution to the Legislature. Where we differ is the extent to which that power may be vested in the State Board of Education, and whether standards are required to circumscribe the Board's discretion in ascertaining the facts and conditions upon which it may grant or deny the transfer of territory from one school district to another. The court states it has no intention to retreat from the holdings announced in *State, ex rel., v. Storey,* 144 Kan. 311, 58 P. 2d 1051; *State, ex rel., v. Hines,* 163 Kan. 300, 182 P. 2d 865; *State, ex rel., v. School District,* 163 Kan. 650, 185 P. 2d 677; *School District, Joint No. 71 v. Throckmorton,* 189 Kan. 590, 370 P. 2d 89; *Tecumseh School District v. Throckmorton,* 195 Kan. 144, 403 P. 2d 102; *Board of Satanta v.*

*Grant County Planning Board,* 195 Kan. 640, 408 P. 2d 655, cert. den. 385 U. S. 6, 17 L. Ed. 2d 6, 87 S. Ct. 50.

It is obvious to me the court has retreated, and in so doing now asserts a new and doctrinal concept permitting courts to test the validity of orders issued by an agency authorized by the Constitution to exercise legislative power as may be imposed upon it by a constitutional statute. The court appears to assert such orders may be entered only if standards are prescribed to control the discretion of the agency.

The court concedes that by the adoption of Article 6 of our Constitution in 1966, the State Board of Education may exercise the general supervision of the state's educational interests and exercise such power as may be imposed upon it by the Legislature. In specifying the duties of the new board created by Article 6, Section 2, the drafters of the article chose to include almost verbatim the language contained in the prior provision of the Constitution, that is, the new board "shall have general supervision of . . . all the educational interests of the state . . ." and shall "perform such other duties as may be provided by law." The only difference is that the present Constitution substitutes "provided" by law for "prescribed" by law. The two are synonymous in this context.

The cases cited by the court commit it to the following propositions: (1) The power to exercise discretion in a legislative area, *unfettered by standards or guidelines,* may be exercised only by the Legislature or by some agency specifically authorized by the Constitution to receive and exercise a delegation of such power, and (2) in the field of education, Article 6, Section 2 of our Constitution specifically authorizes the delegation of such legislative power to the State Board of Education.

In *State, ex rel., v. Storey,* supra, this court said:

". . . He is authorized to perform any duties pertaining to the educational interests of the state which the legislature deems wise and prudent to impose upon him. Under these provisions it cannot be said that the legislature is without authority to authorize the state superintendent of public instruction *to perform duties, or determine questions, with respect to the educational interests of the state which, in the general classification of powers of government, would be regarded as legislative in character.*" (l. c. 317.) (Emphasis supplied.)

In *State, ex rel., v. Hines,* supra, we stated:

". . . If the powers sought to be delegated are legislative in character, as distinguished from administrative, ordinarily they cannot be delegated unless their delegation is authorized by some express provision of the constitution. . . . The functions of the legislature must be exercised by it alone and

cannot be delegated unless there is constitutional sanction therefor." (l. c. 302, 303.)

In *Tecumseh School District v. Throckmorton,* supra, this court sustained *Storey* and *Hines,* and said:

" '. . . the legislature can confer legislative power upon the state superintendent of public instruction because the constitution "specifically authorized him to 'perform such other duties as may be prescribed by law,' without limiting those duties to such as might be classified as executive or administrative only".' " (l. c. 147.)

The statute in question differs materially from those types of cases in which the Legislature enacts a law in general terms and confers upon a board or commission power to apply and enforce the law by ascertaining the existence or nonexistence of some fact by which the board is required to ascertain, that is, the legislative power is exercised pursuant to the Constitution when the Legislature enacts legislation and declares that it shall operate upon the existence or nonexistence of some future fact or event. The board or commission is merely an agent of the law-making department to ascertain and declare the facts upon which the express will of the Legislature shall take effect.

The result is that whether *Storey* and its progeny be right or wrong, the present Constitution (Art. 6, Sec. 2) authorizes the vesting of "legislative" power in the State Board of Education—that is to say, the power to exercise its discretion in matters entrusted to it in the same manner that the Legislature might. In this virtually unique area of our constitutional law no standards or guidelines are required. The board acts as a mini-legislature of its own.

The court apparently is saying that on remand the district court will be faced with three issues; namely, whether the challenged order is "unlawful," "unreasonable," or "arbitrary." These, to me are not proper challenges to a legislative act. Legislative acts are stricken down by courts only when they offend some specific and identifiable provision of the Constitution. There is no contention the transfer order was not made in compliance with the statutorily prescribed procedure. The parties concede it was. Under similar circumstances we said in *Satanta* that,

". . . The Act laid down no standards to control the manner in which the state superintendent would obtain the facts and information which would govern his discretion in granting or denying transfer of the gray-area. . . ."

\* \* \* \* \*

"The steps taken by the state superintendent, being in harmony with the statute which we have held to be constitutional (citation), cannot be made the subject of a charge of unlawful and arbitrary conduct." (l. c. 648.)

As was stated in *State, ex rel., v. Brooks,* 160 Kan. 526, 163 P. 2d 414, "[t]he state superintendent (now State Board of Education) is better equipped to ascertain what is good for the particular school district than a court would be." (p. 532.)

Had the Legislature, by duly enacted law made the transfer of territory here in issue—and there is no question but that it could (*State, ex rel., v. School District,* 163 Kan. 650, 185 P. 2d 677)—no court of this state would have entertained a challenge on the grounds asserted by these plaintiffs. I think the Board's order should be tested by the same standards, and statements in the opinion to the effect that "[a]dequate guidelines to carry out the legislative function delegated appear in the school unification acts," must be disregarded.

Accordingly, I join the court in reversing, but I would direct the entry of judgment for the defendants.

SCHROEDER, J., concurring and dissenting: I concur in the court's opinion that K. S. A. 72-7108, the transfer statute, is not unconstitutional, and the transfer order of the State Board of Education is not void for reasons stated by the district court. I would affirm the decision of the district court, however, for reasons hereafter stated.

If the decision of the district court is correct, even though based upon an erroneous premise, the decision must be affirmed. (*Leaderbrand v. Central State Bank of Wichita,* 202 Kan. 450, 450 P. 2d 1.)

The court in its opinion recognizes that no *regulations governing the exercise of the power to transfer territory between unified school districts have been adopted by the State Board of Education,* although authorized to do so by K. S. A. 72-7514.

The Board of Education *by its answer admitted* that "on or about the 26th day of June, 1973, the State Board of Education, by the defendant commissioner of education, issued its order", a copy of which was marked Exhibit A and attached to the petition. That order recites in part:

"2. Notice of the hearing on the petition described in paragraph 1 above was duly published in the Plainville Times as provided by law, and proof of such publication is on file in the office of the State Board of Education. In accordance with said notice a hearing was held on said petition on May 8, 1973, at 10:00 a. m. in the courtroom of the courthouse in Stockton. *Such hearing was conducted by Robert N. Jones, a duly designated hearing officer appointed by and for the State Board of Education.*

\* \* \* \* \*

"4. After consideration *of all matters presented orally or otherwise at the*

*hearing described in paragraph 2 above,* and being fully advised in the premises, it is hereby ordered that the following described territory:
[described territory]
be and on the effective date of this order is transferred from Unified School District No. 269, Rooks County, State of Kansas, to Unified School District No. 270, Rooks County, State of Kansas." (Emphasis added.)

The foregoing establishes that the State Board of Education designated a hearing officer, Robert N. Jones, to conduct the hearing in this matter; that such hearing was conducted *without making a record of the proceedings at the hearing;* and that the Board issued its order, based upon "all matters presented orally or otherwise at the hearing" conducted by the designated hearing officer, over the signature of C. Taylor Whittier, who was the Board's appointed acting commissioner of education and administrative supervisor. (These facts are admitted by the Board's answer.)

The inescapable conclusion is that none of the ten members of the Board of Education named in the petition heard or reviewed the relevant evidence presented at the hearing. The intention of the legislature, to delegate authority to the Board for the determination of transfer matters of this character in an administrative proceeding, was frustrated when the Board did nothing more than delegate such legislative authority to a hearing officer and its administrative supervisor.

It follows the order issued over the signature of the Board's administrative supervisor, the commissioner of education, was unlawful. The administrative determination was in violation of the Kansas Constitution, Art. 6, Sec. 1 and 2, and K. S. A. 72-7108. Board action transferring territory from one school district to another, based upon proceedings disclosed by the record herein, was arbitrary, capricious and unreasonable.. As a result the purported transfer of territory from one school to the other is void.

This was the substance of the charges alleged in the petition.

Most of the complaints asserted by the trial court in stating the reasons for its decision can be remedied by the Board of Education upon the promulgation and adoption of adequate rules and regulations within the broad framework of the legislation pursuant to which the rules are authorized.

It is respectively submitted the judgment of the lower court should be affirmed.