No. 102,350

143rd STREET INVESTORS, L.L.C., *et al., Appellees,* v. THE BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, *Appellant,* and THE CITY OF OLATHE, KANSAS, A Municipal Corporation, *Appellee.*

(259 P.3d 644)

 Opinion filed August 5, 2011. 

*Richard J. Lind*, deputy county counselor, argued the cause and was on the briefs for appellant Board of County Commissioners of Johnson County.

*Thomas A. Glinstra*, city attorney, argued the cause, and *Michael J. Price*, assistant city attorney, was with him on the brief for appellee City of Olathe.

*Rod L. Richardson*, of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Overland Park, argued the cause, and *James L. (Jay) MowBray*, of the same firm, was with him on the brief for appellee 143rd Street Investors, L.L.C., now Pflumm 143, Inc.

The opinion of the court was delivered by

LUCKERT, J.: This appeal raises issues regarding the interpretation and application of K.S.A. 3-307e, a statute relating to the rezoning of property within 1 mile of the Johnson County Executive Airport (Airport). Under this unique statutory scheme, a proposed rezoning must have the approval of the city and the county in which the property is located. In this case, the City of Olathe (City) approved the proposed rezoning, but Johnson County (County) did not. On judicial review of the County's decision to disapprove the proposed rezoning, the district court found the County's authority was limited to conducting a quasi-judicial review of the City's approval. Applying general principles related to quasi-judicial review of zoning decisions, the district court held the County had to approve the proposed rezoning unless the County could establish the City's decision was unreasonable. Concluding the County did not satisfy its burden, the district court upheld the City's decision to approve the rezoning.

The County appeals, arguing, among other things, that the district court erroneously interpreted K.S.A. 3-307e to mean that the County had to approve the proposed rezoning unless the County could show that the City's decision was unreasonable. We agree with the County's argument and conclude the district court's ruling was erroneous because K.S.A. 3-307e allows the County to reach an independent determination that a court must presume to be

reasonable. As a result of that presumption, to successfully challenge the County's action under K.S.A. 3-307e, a landowner must prove by a preponderance of the evidence that the County's action was unlawful or unreasonable. Because these rules were not applied by the district court in this case, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

This action was filed by landowners who, during the litigation, filed a Motion to Substitute Party Plaintiff pursuant to K.S.A. 2010 Supp. 60-225(c). Through a series of assignments and purchases, the ownership of the subject property has changed hands a number of times. For simplicity, the plaintiffs in this action will be referred to as the "landowners." These landowners own approximately 95 acres of land on the southeast corner of 143rd Street and Pflumm Road, located in the City and County. A portion of the property lies within the Airport's "primary flight corridor subarea A," which is a 500-foot-wide corridor centered along the extended centerline of the existing runway. Most of the property is located adjacent to this corridor and is not on the direct path of landings or takeoffs.

For several decades, this property has been zoned agricultural. Seeking to change this zoning, the landowners filed an application with the City to classify the property as "RP-1" (planned single-family residential) and to approve a "preliminary plat for a subdivision with 230 lots and 16 tracts to be known as Amber Ridge." The Amber Ridge development would have an overall density of approximately 2.4 dwellings per acre.

The Olathe City Planning Commission (City Planning Commission) conducted public hearings and fully reviewed the rezoning application. As part of this process, the Olathe City Planning Staff (City Planning Staff) received a letter in which the Johnson County Department of Planning, Development, and Codes (County Planning Department) objected to the proposed rezoning because the Amber Ridge development plan included "a density that is significantly more than supported by the recently adopted" Johnson County Executive Airport Comprehensive Compatibility Plan (Airport Compatibility Plan). The Airport Compatibility Plan, which

had been adopted by the County but not the City, allowed a housing density of one dwelling unit per acre on the subject property.

Ultimately, the City Planning Staff recommended the City Planning Commission approve the proposed rezoning because it was consistent with the goals, objectives, and policies of the City's comprehensive plan, which identified the future land use of the subject property as residential in nature, and it met the requirements of the City's "Unified Development Ordinance." The failure to comply with the Airport Compatibility Plan was not a detriment to the City's approval, according to the City Planning Staff, because the City had not adopted the Airport Compatibility Plan and was not required to do so. The City Planning Staff's recommendation suggested several stipulations, however. These included requirements that the construction incorporate soundproofing materials and that there be plat and deed notations indicating that the property is adjacent to the Airport and "will be subject to high frequency of over flights by aircraft at low altitudes." Upon receipt of this information, the City Planning Commission voted to deny the rezoning request.

The rezoning application was next considered by the Olathe City Council (City Council). The City Council heard a presentation from the Assistant City Planner and comments from nine concerned citizens (regarding safety, noise, aircraft and vehicle traffic, storm water run-off, and schools), the landowners' engineer, and the landowners' planning consultant. The City Council learned that the City Planning Staff was still in favor of the rezoning and that the development fit within the City's comprehensive plan. The City Council then unanimously approved the rezoning (Ordinance No. 05-38), as well as the associated preliminary development plan and preliminary plat for Amber Ridge. The approved ordinance had several stipulations, including the soundproofing and plat notations suggested by the City Planning Staff.

A copy of the landowners' rezoning application, the plat, and the record developed during the City's consideration of the application were then forwarded to the County. With this step, the procedure deviated from the process that had been followed when previous landowners of the same property had attempted a similar rezoning,

which the City approved. That earlier attempt, like this one, led to litigation.

*Earlier Litigation*

In the earlier litigation, *Board of Johnson County Comm'rs v. City of Olathe*, 263 Kan. 667, 952 P.2d 1302 (1998), the Johnson County Board of Commissioners (County Commissioners) filed suit, alleging, among other things, that the rezoning was unlawful because the County had not been asked to approve the proposed rezoning and, therefore, the requirements of K.S.A. 3-307e had not been met. In addition, the County argued the City's decision to approve the rezoning was arbitrary, capricious, and unreasonable because rezoning to allow the planned development of three dwellings per acre would permit a population density that was incompatible with the neighboring airport. *Board of Johnson County Comm'rs*, 263 Kan. at 672-74.

The district court, in the earlier litigation, focused on the arguments regarding whether the City's decision was reasonable and did not address the issue of whether the ordinance was lawful. The district court found, in part, that " '[d]ue to the proximity of the subject real property to the existing airport, and the dangers associated with potential aircraft crashes, the subject property is not suitable for high density residential development.' " *Board of Johnson County Comm'rs*, 263 Kan. at 675. The City and landowners appealed to this court.

This court reiterated that a zoning authority, such as the City, is presumed to make reasonable zoning decisions and held: "A court may not substitute its judgment for that of the administrative body and should not declare the action unreasonable unless clearly compelled to do so by the evidence." *Board of Johnson County Comm'rs*, 263 Kan. at 683. Concluding there was no compelling evidence of unreasonableness, this court reversed the district court's decision and remanded the case for a determination of the legal issue the district court had not reached: Was the rezoning ordinance lawful in light of the requirement in K.S.A. 3-307e that the County approve any rezoning? *Board of Johnson County Comm'rs*, 263 Kan. at 683-84.

Although the progress of the case on remand is not clear, the record before us indicates that the rezoning was never finalized and the property remained zoned for agricultural use. Consequently, when plans were formulated to develop Amber Ridge, the landowners in the present case had to initiate a new application to rezone the property and, following the directives of K.S.A. 3-307e, seek the approval of the County once the City approved the rezoning and the plat.

*This Case: Amber Ridge Rezoning*

The effort to seek the County's approval began upon the County's receipt of the City's record. In the first step of the County's consideration, the County Commissioners conducted a public hearing. The County Commissioners then referred the application to the Johnson County Airport Commission (Airport Commission). The Airport Commission reviewed the proposed Amber Ridge development and considered presentations by representatives of the landowners, the County Planning Department, and the Aircraft Owners and Pilots Association Support Network. Based on this information, the Airport Commission unanimously voted to recommend the denial of the rezoning for two reasons: (1) "The proposed density is not compatible with the Airport Compatibility Plan," and (2) "The proposed open space is not sufficient in amount or location."

After receiving the Airport Commission's recommendation, the County Commissioners denied the landowners' rezoning application. In doing so, the County Commissioners echoed the Airport Commission's concerns about insufficient open space and the "negative impact upon, and incompatibility with" the Airport Compatibility Plan. The County Commissioners felt the proposed population density of 2.4 dwellings per acre caused concerns about airport noise, public safety, emergency landings, and airport crashes. (Two crashes had occurred on the property within the last 15 years, according to testimony during the county approval process.)

Challenging the County's denial of the rezoning application, the landowners filed a petition for judicial review in Johnson County

District Court. The district court held, in part, that the City was the zoning authority and the County took a quasi-judicial role in reviewing the City's rezoning decision. Observing that under the holding in *Board of Johnson County Comm'rs*, 263 Kan. 667, the City is presumed to be "imminently familiar with its real estate, and its boundaries" and to have acted reasonably to promote the welfare of the City, the district court concluded the County must overcome the presumption that the City's decision was reasonable.

In considering whether the County had met this burden, the district court recognized the County Commissioners' "main objection was that airplanes can crash on take off and landing, and the plaintiffs' land is within the boundaries of where planes tend to crash." But the district court questioned the reasonableness of concluding that the proposed development caused a greater safety concern than other surrounding developments that had been approved by the County Commissioners. For example, a residential development to the west of the subject property, also within 1 mile of the Airport, had been approved even though it had a higher proposed population density than the proposed Amber Ridge development. The district court also found it significant that the Airport Compatibility Plan approved residential use of the subject property, albeit at the lower density level of one dwelling per acre, and, in light of that, questioned whether the difference in density between the Airport Compatibility Plan and the proposed development was significant, noting:

"The dispute between the parties comes [down] to the density of development on this real estate. Apparently, the Board of County Commissioners assume[s] that if there were 2.4 dwellings per acre, and if a plane crashed, it would hit both houses or 2.4 houses, whereas if it would crash under the [Airport Compatibility] Plan, it would only hit one house.

"There is no study in the record to establish the degree of risk of 2.4 houses per acre versus one house per acre. There is no showing that if 2.4 dwellings were constructed on the real estate in question that there would be an increase[d] risk of loss of life or showing that the crash of the airplane would hit both houses."

Further, the district court concluded that the County Commissioners' objections to the rezoning were not based on a concern that the density of the Amber Ridge development would "obstruct"

landings or take-offs because the subject property "is off to the side." The County Commissioners' concern that the presence of the Amber Ridge development would require pilots to take a steeper approach to the Airport was not a legitimate concern, according to the district court, because above-ground power lines currently cross the property and force a steep approach.

Based on these conclusions, the district court rejected the idea that the development would create an "airport hazard," defined by K.S.A. 3-701(2), or an "airport hazard area," defined by K.S.A. 3-701(3). Additionally, the district court rejected the landowners' argument that the County had no authority to deny the rezoning if an airport hazard or airport hazard area was not created, stating:

"The Court finds that under Chapter 3, Article 3, the Board of County Commissioners *would not be limited* in its review authority to just airport hazards. The Court finds that in Chapter 3, Article 7, [adoption of airport zoning regulations] the County's authority is limited to 'airport hazards' or 'airport hazard areas,' however in Chapter 3, Article 3, the County may consider reasonable factors in addition to an airport hazard, including density. However, in reviewing the actions of the County Commissioners, they have not made a finding of airport hazard or the existence of an airport hazard area. There has been no finding plaintiff's property constitutes an obstruction, an airport hazard or airport hazard area." (Emphasis added.)

Ultimately, the district court found that the County failed to meet its burden of proof in order to overcome the presumption of reasonableness that applied to the City's decision. Consequently, the district court deemed the City's decision to rezone the property lawful and ordered the publication of the City's rezoning ordinance. Further, an inverse condemnation claim brought by the landowners was deemed moot. Subsequently, the County filed a motion to stay enforcement, which the district court heard after the ordinance had been published. Because the City's ordinance had been published, the district court declared the motion moot.

The County now appeals, raising several issues. We have taken the liberty to reorganize the various arguments of the parties into the following issues: (1) Did the district court err in concluding that K.S.A. 3-307e does not authorize the County to make an independent, discretionary rezoning determination? (2) What stan-

dard should the district court have used to review the County's decision to disapprove the rezoning? (3) Was the County's decision to disapprove the proposed rezoning entitled to a presumption of reasonableness that the landowners were required to overcome by proving that the County's action was unreasonable? (4) Was the County's decision to disapprove the proposed rezoning lawful and reasonable? and (5) Did the district court err in denying the County's motion to stay the district court's rezoning ruling pending this appeal?

Our jurisdiction arises from K.S.A. 20-3018(c) (a transfer from the Court of Appeals on this court's own motion).

## ANALYSIS

Issue 1: *Did the district court err in concluding that K.S.A. 3-307e does not authorize the County to make an independent, discretionary rezoning determination?*

The first issue presents a question of statutory interpretation, which is a question of law that is subject to unlimited review. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009). Well-known principles of statutory interpretation apply:

" 'When we are called upon to interpret a statute, we first attempt to give effect to the intent of the legislature as expressed through the language enacted. When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent.' [Citations omitted.]" *Manly v. City of Shawnee*, 287 Kan. 63, 68, 194 P.3d 1 (2008).

In addition to these principles, the County argues we should apply the doctrine of operative construction and, because the County is the entity that must apply the provision, defer to its interpretation of the statute. This argument ignores recent case law, which reflects that the doctrine of operative construction has lost favor with this court. These recent decisions have held that "an agency's or board's statutory interpretation is not afforded any

significant deference on judicial review. . . . [A]n appellate court exercises unlimited review on the determinative question of statutory interpretation without deference to [the agency's] view as to its own authority." *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 457, 228 P.3d 403 (2010).

We apply these general guidelines to our interpretation of K.S.A. 3-307e. Article 3 of chapter 3 of the Kansas Statutes Annotated applies only to Johnson County and the Airport. See K.S.A. 3-301; *Higgins v. Johnson County Comm'rs*, 153 Kan. 560, 563-64, 112 P.2d 128 (1941) (indicating the legislation was adopted after federal government selected Johnson County as site and dedicated funds for development of airport as part of national defense plan).

K.S.A. 3-307e states:

"The airport commission shall act as an airport zoning commission for the county and as such shall make recommendations and serve in the same capacity as an airport zoning commission provided for in subsection (2) of K.S.A. 3-705. Said commission shall make such recommendations concerning type and boundary of zones and regulations to be adopted for public airports and all property within one (1) mile thereof. *The board of county commissioners shall act on such recommendations and may zone such public airports and the surrounding areas within one (1) mile except where such areas have already been zoned by city action. In such cases, city zoned areas shall keep such city zoning control except that any changes in existing city zoning must have the approval of the board of county commissioners.* All airport zoning regulations adopted as provided for herein shall be administered by the airport commission, as directed by the board of county commissioners. The county commissioners shall exercise directly all the zoning authority granted by this act in the event an airport commission is not appointed or functioning.

"The provisions of article 7 of chapter 3 of the Kansas Statutes Annotated shall, insofar as the same can be made applicable, govern judicial review and enforcement and remedies for airport zoning regulations adopted pursuant hereto." (Emphasis added.)

When this provision was adopted in 1967 (see L. 1967, ch. 10, sec. 11), the landowners' property had been zoned by the City. Consequently, it was a "city zoned area" that kept "such city zoning control." Nevertheless, because the landowners' property fell within 1 mile of the Airport and the landowners were requesting a change in existing city zoning, there is no dispute that K.S.A. 3-307e requires that the rezoning "must have the approval of the

county commission." There are disputes, however, about what "approval" of the County means. We have organized the parties' arguments into the following subissues: (a) Does K.S.A. 3-307e grant the County the authority to approve or disapprove a rezoning request? (b) Does the absence of procedural and substantive direction in K.S.A. 3-307e indicate that the County is to merely review the City's decision? (c) Does the absence of direction in K.S.A. 3-307e render it unconstitutionally vague? and (d) Do principles relating to home rule, comprehensive plans, and preemption mean that the County cannot exercise discretion?

(a) *Does K.S.A. 3-307e grant the County the authority to approve or disapprove a rezoning request?*

First, the City and the landowners suggest that the word "approval" in K.S.A. 3-307e means that the County has no discretion and must accept any reasonable rezoning decision made by the City. Countering this argument, the County contends it is authorized to conduct a review of the rezoning application and make an independent determination, exercise its full discretion, and approve or disapprove the proposed rezoning.

In support of the County's argument, it cites *State, ex rel., v. Brooks*, 160 Kan. 526, 163 P.2d 414 (1945), an original action in mandamus in which the plaintiffs asked this court to order the state superintendent of public instruction to consent to the annexation of certain territory to a rural high school district. The statute in effect at that time provided for the annexation of new territory to a rural high school district if petitions were signed by a majority of the electors of the proposed territory and the annexation had the "approval" of the rural high school board and the "consent" of the county superintendent of public instruction. The petition requirement was satisfied and the board approved the annexation, but the county superintendent did not consent. The plaintiffs appealed to the state superintendent, who also refused to consent to the annexation.

In considering whether a mandamus order was an appropriate remedy, the *Brooks* court discussed the meaning of the terms "consent" and "approval" and concluded that both terms grant discre-

tion to accept or reject the annexation. "It is pretty hard to see," stated the *Brooks* court, "why the lawmakers provided that the county superintendent had to consent if his action was purely ministerial. Such a construction renders the use of the word 'consent' meaningless." *Brooks*, 160 Kan. at 530. The *Brooks* court further explained that "[i]f after the board *approved or refused its approval* the rest of the steps were ministerial there would not be any reason at all for providing for an appeal." (Emphasis added.) *Brooks*, 160 Kan. at 530; see also *McCarten v. Sanderson et al.*, 111 Mont. 407, 109 P.2d 1108 (1941) ("approval" implies such concepts as "knowledge and the exercise of discretion after knowledge" and "the exercise of judgment"); *Melton v. Cherokee Oil & Gas Co.*, 67 Okla. 247, 253, 170 P. 691 (1918) (on rehearing), *cert. denied* 247 U.S. 507 (1918) (" 'The very act of "approval" imports the act of passing judgment, the use of discretion, and the determination as a deduction therefrom unless limited by the context of the statute.' ").

The County argues that the *Brooks* court's conclusion also applies to K.S.A. 3-307e: The requirement of County approval of any City rezoning within 1 mile of the Airport would be meaningless if it were purely ministerial. Consequently, the County argues the County Commissioners had the discretion to refuse to approve the proposed rezoning just as the school board in *Brooks* had the discretion to disapprove the proposed annexation and the superintendent had the discretion to refuse consent.

We agree and conclude that the interpretation in *Brooks* and similar cases is consistent with the common understanding of the "must have the approval" phrase used in K.S.A. 3-307e. In common usage, if one must have approval as a condition precedent, one knows that disapproval is possible. Certainly, as the Oklahoma court indicated in *Melton*, 67 Okla. 247, a legislature can limit this discretion. For example, there are Kansas statutes in which the legislature has defined alternatives to "approval," including at least one, K.S.A. 12-756, which can be found in zoning statutes. In K.S.A. 12-756, the legislature requires a planning commission to submit proposed zoning regulations to its city or county governing body and that body may "(1) [a]pprove such recommendations by the adoption of the same by ordinance in a city or resolution in a

county; (2) override the planning commission's recommendations by a ⅔ majority vote of the membership of the governing body; or (3) may return the same to the planning commission for further consideration." K.S.A. 3-307e, however, does not include or incorporate any such limitations on the type of action that can be taken.

Further, the requirement in K.S.A. 3-307e that "any changes in existing city zoning must have the approval of the board of county commissioners" is similar to language used in several Kansas statutes that are commonly understood to grant a zoning authority the discretion to approve or disapprove a zoning proposal. *E.g.*, K.S.A. 12-749 (political subdivision may "approve" recommendation to amend subdivision regulations); K.S.A. 2010 Supp. 12-752 (procedures for "approval" of platting and replatting); K.S.A. 2010 Supp. 12-757(d) (procedures for amending zoning regulation; using term "approval"); K.S.A. 2010 Supp. 19-2960 (procedures relating to protest of rezoning; using phrase "approve or disapprove"). The word "approval" in K.S.A. 3-307e is used in the same sense and indicates the County serves in the same approval role as other zoning authorities, *i.e.*, the County also has the right to disapprove a proposal.

Finally and importantly, K.S.A. 3-307e is not worded as a review provision. Not only does the statute use the term "approval" rather than "review" or a similar term, it does not provide any criteria for a review. Rather, under the statute, the County exercises its full discretion to approve or disapprove the rezoning application.

(b) *Does the absence of procedural and substantive direction in K.S.A. 3-307e indicate that the County is to merely review the City's decision?*

On the other hand, the City and landowners suggest that the legislature did not provide any guidance regarding the procedure for the County's approval process or indicate the substantive considerations. This lack of guidance, they argue, means the legislature cannot have intended the County to be a zoning authority. This argument ignores the first two sentences of K.S.A. 3-307e, which state:

"The airport commission shall act as an airport zoning commission for the county and as such shall make recommendations and serve in the same capacity as an airport zoning commission provided for in subsection (2) of K.S.A. 3-705. Said commission shall make such recommendations concerning type and boundary of zones and *regulations to be adopted for public airports and all property within one (1) mile thereof.*" (Emphasis added.)

The district court concluded that each sentence granted a different type of authority to the County. Consequently, we will examine each separately.

### (i) *Airport Zoning Commission under K.S.A. 3-705(2)*

The first sentence of K.S.A. 3-307e grants an airport zoning commission (here, the Airport Commission) the power defined in K.S.A. 3-705(2). Article 7 of chapter 3 of the Kansas Statutes Annotated relates to airport hazards. Consequently, the landowners argue the County's decision must be limited to a determination of whether the City's rezoning of the property would create an "airport hazard," as defined by K.S.A. 3-701(2) ("any structure or tree or use of land which obstructs the airspace required for the flight of aircraft in landing or taking-off at any airport or is otherwise hazardous to such landing or taking-off of aircraft"), or "airport hazard area," as defined by K.S.A. 3-701(3) ("any area of land or water upon which an airport hazard might be established if not prevented as provided in this act"). See K.S.A. 3-702 (airport hazards contrary to public interest).

As the district court interpreted the County Commissioner's findings, the rezoning of the subject property did not create an airport hazard or an airport hazard area. Consequently, the district court concluded that K.S.A. 3-704(2), which states that "the more stringent limitation or requirement as to airport hazards shall govern and prevail," did not apply. However, the district court also rejected the landowners' argument that the County's authority was limited to consideration of a rezoning proposal that would create a hazard.

Given that the district court ruled in the County's favor on this question, the County did not appeal this finding. But neither did the landowners, even though, as appellees, they were required to

cross-appeal from the adverse ruling in order to obtain appellate review of the issue. See *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 191-92, 106 P.3d 483 (2005). Raising new issues in a later pleading, such as a docketing statement answer or brief, is insufficient to obtain appellate review. See *Board of Meade County Comm'rs v. State Director of Property Valuation*, 18 Kan. App. 2d 719, 722, 861 P.2d 1348, *rev. denied* 253 Kan. 856 (1993). Consequently, this question is not preserved for our review.

(ii) *Procedure for Rezoning of Property in 1-Mile Radius*

As a result, we base our analysis, as did the district court, on the second sentence of K.S.A. 3-307e, which empowers the Airport Commission to make "recommendations concerning type and boundary of zones and regulations to be adopted for public airports and all property within one (1) mile thereof." The district court interpreted this sentence to grant the County authority over property within the 1-mile radius of the Airport regardless of whether a rezoning proposal would create a hazard.

As the City and the landowners note, neither this sentence nor the remainder of the provision provides guidance as to the procedure or substantive considerations that may apply. Nevertheless, other statutes define the procedures. Specifically, K.S.A. 2010 Supp. 19-2960, which addresses amendments to regulations and rezoning by a county commission, states in part:

"A proposal for an amendment, rezoning or conditional use permit may be initiated by the board of county commissioners, the planning commission, *any zoning board* or upon application of the owner of property affected.

. . . .

"All such proposed amendments, rezonings or conditional use permits first shall be submitted to either the planning commission for recommendation regarding amendments or the *appropriate zoning board* for recommendation regarding rezonings or conditional use permits. All notice, hearing and voting procedures for consideration of proposed amendments, rezonings and conditional use permits shall be the same as that required for amendments, extensions or additions to the comprehensive plan as provided by K.S.A. 19-2958." (Emphasis added.) K.S.A. 2010 Supp. 19-2960(d).

The remainder of K.S.A. 2010 Supp. 19-2960 includes specifics regarding notice and the procedure for the consideration and adop-

tion of amendments and rezonings. By operation of the second sentence of K.S.A. 3-307e, this provision is applicable to the proceedings of the Airport Commission as a zoning board and to the subsequent consideration by the County Commissioners. Hence, in combination, K.S.A. 3-307e and K.S.A. 2010 Supp. 19-2960 define the procedural aspects of a rezoning application that is before the County Commissioners for approval.

As to the criteria or substantive considerations for the County's decision, this court has provided guidance to zoning authorities by suggesting that they utilize the nonexclusive factors established in *Golden v. City of Overland Park*, 224 Kan. 591, 598-99, 584 P.2d 130 (1978), and consider other relevant factors, including the zoning authority's own comprehensive plan when acting on a rezoning application. *Board of Johnson County Comm'rs v. City of Olathe*, 263 Kan. 667, 683, 952 P.2d 1302 (1998); see *Davis v. City of Leavenworth*, 247 Kan. 486, 493, 802 P.2d 494 (1990) ("Our observation [in *Golden*] continues to have merit. We commend it to any board, council, or commission denying or granting a specific zoning change.").

The Airport Compatibility Plan, which served as the County's comprehensive plan for the area including the subject property, recognized the *Golden* factors and covered issues specific to airport development and safety. The factors listed in *Golden* were:

" 'Even though the validity of each zoning ordinance must be determined on its own facts and circumstances . . . an examination of numerous cases discloses that among the facts which may be taken into consideration in determining validity of an ordinance are the following: (1) The existing uses and zoning of nearby property . . . (2) the extent to which property values are diminished by the particular zoning restrictions . . . (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public . . . (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner . . . (5) the suitability of the subject property for the zoned purposes . . . (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. . . .

" 'No one factor is controlling.' " *Golden*, 224 Kan. at 598-99.

In light of the general guidance given to the County by operation of K.S.A. 2010 Supp. 19-2960 and this court's decision in *Golden*

and subsequent decisions, we reject the landowners' argument that the County's approval procedures and considerations are not defined by Kansas law.

(c) *Does the absence of direction in K.S.A. 3-307e render it unconstitutionally vague?*

The landowners also place a different spin on the lack of procedural and substantive detail in K.S.A. 3-307e and argue for the first time on appeal that K.S.A. 3-307e is unconstitutional in that it (1) does not provide standards of conduct to govern the County's authority to approve or disapprove the City's rezoning efforts and (2) contains an unlawful delegation of legislative powers.

"Generally, issues not raised before a district court, including constitutional grounds for reversal, cannot be raised for the first time on appeal." *Trotter v. State*, 288 Kan. 112, 124, 200 P.3d 1236 (2009); *Miller v. Bartle*, 283 Kan. 108, 119, 150 P.3d 1282 (2007). Three exceptions to the general rule have been recognized, however. They are:

"(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason." *State v. Ortega-Cadelan*, 287 Kan. 157, 159, 194 P.3d 1195 (2008).

See *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967).

The landowners argue this case falls within the first and second exceptions because the issue involves solely a question of law and relates to a fundamental right. While the question is one of law, it is not determinative of the case because there is no legal basis for the argument. See *Ortega-Cadelan*, 287 Kan. at 160 (" '[T]o serve the ends of justice or to prevent the denial of fundamental rights, it follows that, on consideration, we must find reversible error occurred.' "). As we have discussed, while K.S.A. 3-307e does not answer all of the points raised by the landowners, other applicable statutes fill in the gaps. Further, the landowners do not explain the fundamental right that is at issue, especially when previous Kansas cases analyzing vagueness questions have focused on criminal and

regulatory statutes. See, *e.g.*, *Boatright v. Kansas Racing Comm'n,* 251 Kan. 240, 243, 834 P.2d 368 (1992) (relying on *Guardian Title Co. v. Bell,* 248 Kan. 146, 805 P.2d 33 [1991], and discussing existence of two vagueness analyses, criminal and "business"; statutes regulating business afforded greater leeway). K.S.A. 3-307e does not squarely fit into either exception.

(d) *Do principles relating to home rule, comprehensive plans, and preemption mean that the County cannot exercise discretion?*

The landowners and the City present several other arguments to support the contention that the legislature cannot have intended K.S.A. 3-307e to grant the County the discretion to disapprove the proposed rezoning. One objection stated by the City is that giving the County the power to "veto" the City's rezoning ordinance is contrary to the City's home rule authority. In making this argument, the City correctly points out that under laws regarding home rule authority, the County cannot impose its regulations on the City without the City's consent. See K.S.A. 2010 Supp. 19-101a(4) ("[T]he home rule power conferred on cities to determine their local affairs and government shall not be superseded or impaired without the consent of the governing body of each city within a county which may be affected."). Additionally, the City observes that nothing in K.S.A. 3-307e requires the City to adopt County regulations or the Airport Compatibility Plan, *i.e.*, the County's comprehensive plan regarding airport zoning. In fact, the record shows that the City had *not* adopted the Airport Compatibility Plan.

Even though these points are valid, they do not lead us to the conclusion that the County cannot reach a decision regarding the proposed rezoning that is independent of the City's. A political subdivision's planning and zoning power is derived from the grant contained in zoning statutes. *Crumbaker v. Hunt Midwest Mining, Inc.,* 275 Kan. 872, 886, 69 P.3d 601 (2003); *Johnson County Memorial Gardens, Inc. v. City of Overland Park,* 239 Kan. 221, 224, 718 P.2d 1302 (1986); see also *Zimmerman v. Board of Wabaunsee County Comm'rs,* 289 Kan. 926, 939, 218 P.3d 400 (2009) (cities' and coun-

ties' power to change zoning of property ' "can only be exercised in conformity with the statute which authorizes the zoning" '). And, by enacting K.S.A. 3-307e, the legislature created an exception to the City's authority by stating that "city zoned areas shall keep such city zoning control except that any changes in existing city zoning must have the approval of the board of county commissioners." We fail to see how the home rule principle or the City's right to refuse to adopt the Airport Compatibility Plan diminishes the County's statutory authority to approve changes in zoning in areas within 1 mile of the Airport.

Making yet another similar argument, the City claims that the County's action cannot preempt the City's. To support the argument, the City cites *Zimmerman,* 289 Kan. at 973, and its holding that field preemption—*i.e.,* the preemption of a local government's action by statutes or rules that occupy an entire field of regulation—must be "expressed by a clear statement in the law." In considering this argument, although we do not reach the questions of whether the doctrine of field preemption applies or, if it does, whether there is field preemption, we note that K.S.A. 3-307e expresses a clear statement of the limitation on the City's authority when it states that "any changes in existing city zoning must have the approval of the board of county commissioners."

In sum, none of these arguments changes our view, based on a plain reading of the statute, that K.S.A. 3-307e does not relegate the County to the role of reviewing the City's action. Rather, K.S.A. 3-307e clearly indicates that the County is a vital authority in the rezoning decision-making process and is entitled to make its own independent, discretionary determination to approve or disapprove any proposed rezoning.

Issue 2: *What standard should the district court have used to review the County's decision to disapprove the rezoning?*

The district court reasoned that because the County's role was to conduct a quasi-judicial review of the City's decision, the district court's review was similarly governed by quasi-judicial review standards. With our decision that the County's role is not one of mere review, the premise of the district court's analysis is undercut. Nev-

ertheless, all of the parties suggest that we can essentially step into the shoes of the district court and review the County's decision to disapprove the proposed rezoning. To determine if we can fulfill that role, we must determine the standard that should have applied to the district court's review and, in turn, the appropriate role of an appellate court.

Because the City and the landowners primarily ask us to limit the County's role to one of quasi-judicial review, they do not discuss an alternative standard of review in detail. In the City's limited discussion of the question, it agrees, at least in broad terms, with the County's suggestion that a limited de novo standard of review should have applied to the district court's review and similarly limits our review. Even though there is apparent agreement that a limited de novo standard applied, the City and the County do not agree as to the source or the parameters of that limited review.

The City notes that the landowners' action was filed in district court pursuant to K.S.A. 3-709. The City does not suggest what the scope of review should be for either the district court or an appellate court under that provision, other than to argue that the provision "does not alter the ultimate burden of proof." The City then suggests the district court appropriately placed that burden of production on the County.

The County cites K.S.A. 60-2101(d), a general statute allowing appeals to the district court from certain administrative decisions and defining the scope of review of a district court and an appellate court. Under that provision, the County asserts that we should utilize the appellate standard of review customarily applied when reviewing the action of a political subdivision exercising quasi-judicial functions. In such circumstances, a district court is limited to determining if the political subdivision's decision fell within the scope of its authority; was supported by substantial competent evidence; or was fraudulent, arbitrary, or capricious. Then, on appeal from the district court, an appellate court reviews the political subdivision's decision as though the initial appeal had been made directly to the appellate court, thus applying the same limited standard. *Brown v. U.S.D. No. 333*, 261 Kan. 134, 138, 928 P.2d 57 (1996); *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447,

450-51, 436 P.2d 828 (1968); see *Gaslight Villa, Inc. v. City of Lansing*, 213 Kan. 862, 864-66, 518 P.2d 427 (1974) (applying administrative review standard to review city's decision to deny special permit under city zoning ordinance).

The County also offers an "alternate" standard of review, one that is unique to zoning cases and examines the reasonableness and lawfulness of a zoning action. This standard was stated in *Golden*, 224 Kan. at 598-99, restated in *Board of Johnson County Comm'rs*, 263 Kan. 667, and *Taco Bell v. City of Mission*, 234 Kan. 879, 885-87, 678 P.2d 133 (1984), and summarized and enumerated in *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 27-28, 605 P.2d 533 (1980), and many other cases, including our recent decision in *Zimmerman*, 289 Kan at 944-45. This standard of review, which we will refer to as the *Golden/ Combined Investment Co.* standard, is summarized in eight principles or rules:

"(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.

"(2) The district court's power is limited to determining

"(a) the lawfulness of the action taken, and

"(b) the reasonableness of such action.

"(3) There is a presumption that the zoning authority acted reasonably.

"(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.

"(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.

"(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark, that its unreasonableness lies outside the realm of fair debate.

"(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.

"(8) An appellate court must make the same review of the zoning authority's action as did the district court." *Combined Investment Co.*, 227 Kan. at 28.

The County does not explain why we would ignore these rules and apply K.S.A. 60-2101(d) and merely presents the two standards of review as alternatives.

The parties presented these same standard of review options to the district court, and the district court decided to apply a combination of the principles set out in K.S.A. 3-709, K.S.A. 60-2101(d), and *Golden/Combined Investment Co.* To determine if this was appropriate, we begin our analysis with K.S.A. 3-307e because it includes a sentence that addresses judicial review, stating, in part, that "[t]he provisions of article 7 of chapter 3 of the Kansas Statutes Annotated shall, insofar as the same can be made applicable, *govern judicial review* and enforcement and remedies for *airport zoning regulations* adopted pursuant hereto." (Emphasis added.) The term "airport zoning regulations" is not defined in the statutes relating to airport zoning. However, the term "zoning regulations" is defined in the general zoning statutes that apply to cities and counties to "mean the lawfully adopted zoning ordinances of a city and the lawfully adopted zoning resolutions of a county." K.S.A. 12-742(11). In prior cases, this court applied the term "zoning regulations" to include actions regarding rezoning, concluding that an " 'action' by the governing body, denying a request for rezoning, is a 'regulation' as contemplated by the statute, from which an appeal to the district court may be taken by petition." *Olson v. City of WaKeeney*, 218 Kan. 447, 448, 543 P.2d 932 (1975) (citing *Bodine v. City of Overland Park*, 198 Kan. 371, 383, 424 P.2d 513 [1967]). We explained this conclusion by noting that a decision to deny rezoning "regulates the specific use which the appellees desire to make of their property, and is encompassed within the term 'regulation.' " *Bodine*, 198 Kan. at 383. Consequently, this action, both in the district court and on appeal, involves a judicial review of a zoning regulation, triggering the judicial review provisions of article 7 of chapter 3 of the Kansas Statutes Annotated.

The specific provision of chapter 3 that relates to judicial review is K.S.A. 3-709, which provides:

"(1) Any person aggrieved, or taxpayer affected by any decision made under the provisions of this act may file within thirty days from the rendition of such decision in the office of the clerk of the district court of the proper county a verified petition setting forth and specifying the *grounds for review* upon which the petitioner relies and designating the decision sought to be *reviewed.* The clerk

shall forthwith cause written notice of such appeal to be served upon the political subdivision or subdivisions.

"(2) Upon presentation of such petition the court shall set it down for hearing and the same shall be *tried de novo as in a civil case*, and enforcement of said regulations shall be stayed until said petition is finally determined by the court. Appeals may be taken to the supreme court from any order, ruling or decision as in other civil cases." (Emphasis added.)

The district court applied K.S.A. 3-709, but the statute does not explicitly define the scope of review. Attempting to discern its role, the district court determined that "in this type of a de novo review, there are restrictions to the court's authority." The court explained that although it could "entertain evidence to clarify a parties' position or to clarify a point," the court's review would be "confined to the issues raised below." The court then specified that it was "reviewing a quasi-judicial decision of the Board of County Commissioners in denying the change in zoning located within one mile of the airport."

This conclusion was based on the district court's attempt to reconcile the wording of K.S.A. 3-709 that refers to a "review" of the political subdivision's decision with the statute's wording that the matter is to be "tried *de novo* as in a civil case." There is some incongruity in this wording because usually a "review" of an agency action is thought of as an "appeal," and an appeal is usually thought of as a review based on the evidence and issues submitted to the agency. In contrast, a trial de novo is thought of as a trial anew. Nevertheless, such wording, while unclear, is not unique.

In *Frick v. City of Salina*, 289 Kan. 1, 208 P.3d 739 (2009), we applied various principles in determining a district court's standard of review under similarly worded statutes. In doing so, we explained that a court's interpretation of a phrase such as "trial de novo," when used in reference to a judicial review of administrative action, is constrained by the separation of powers doctrine. Further, in applying this doctrine, we determined that a district court's scope of review depends on whether the agency was performing a judicial, quasi-judicial, executive, or legislative function. *Frick*, 289 Kan. at 14-16. If the administrative agency performs a function that is legislative, executive, or a combination of the two, *i.e.*, an

administrative function, "the doctrine of separation of powers restricts a reviewing court to a limited form of judicial review, even if a statute provides for de novo review." *Frick*, 289 Kan. at 14. "This narrow standard of review protects against a court's intrusion into an agency's legislative or executive powers." *Frick*, 289 Kan. at 14. If, however, the "administrative agency performs a purely judicial function, the separation of powers doctrine does not prevent a court from conducting a de novo review," although it still may not be a trial anew. *Frick*, 289 Kan. at 16. Consequently, use of the term" trial de novo" in a review statute can lead to varying procedures. To determine which of the variations applies, we must determine the nature of the function being performed when a rezoning decision is being made pursuant to K.S.A. 3-307e.

In this regard, no one has suggested that the County's decision was purely judicial. Hence, we can conclude the district court correctly determined that it should not conduct a full trial or make independent findings of fact. *Cf. Frick*, 289 Kan. at 24 (holding that, where K.S.A. 58-3509[a] provides that an "appeal to district court shall be a trial de novo," district court was required to make independent findings of fact and conclusions of law based on the administrative record because determination of relocation benefits under the Kansas Relocation Assistance for Persons Displaced by Acquisition of Real Property Act was a judicial function); *Angle v. Kansas Dept. of Revenue*, 12 Kan. App. 2d 756, 765, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988) ("[T]he Supreme Court has not interpreted any statute to allow true de novo review in the sense of a new trial on facts and issues as though they had never been tried.").

Indeed, rather than being a judicial function, it is generally recognized that a zoning determination is classified as either a legislative or a quasi-judicial function. *Zimmerman*, 289 Kan. at 946-49. In *Zimmerman*, we concluded that regardless of which classification—legislative or quasi-judicial—applied, Kansas courts have used the "highly deferential language" typically applied to judicial review of legislative action. *Zimmerman*, 289 Kan. at 948. For example, the *Zimmerman* court noted that the *Golden/Combined Investment Co.* standard of review

"include[s] the rule that clearly exemplifies one of the chief characteristics of a legislative action's highly deferential review:

"Rule (6): 'Action is unreasonable when it is so *arbitrary* that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness *lies outside the realm of fair debate.*' (Emphasis added.) *Combined Investment Co.*, 227 Kan. at 28." *Zimmerman*, 289 Kan. at 948.

The *Zimmerman* decision also noted that rules 1, 3, and 5 of the *Golden/Combined Investment Co.* standard of review are "appropriate for reviewing legislative actions." *Zimmerman*, 289 Kan. at 948-49 (citing *Combined Investment Co.*, 227 Kan. at 28). Ultimately, the *Zimmerman* decision reaffirmed the use of the *Golden/ Combined Investment Co.* standard of review in rezoning decisions, stating:

" '[L]ater decisions have made clear that the *Golden* decision has little procedural or substantive impact beyond direct judicial review and the requirement that governing bodies should henceforth supply written findings in support of their decision to grant or deny a rezoning. The standard for validity is still one of reasonableness.' 3 Rathkopf, Rezonings: Validity and Review § 40.20, pp. 40-42 to 40-43 n.11 (citing [*Landau v. City Council of City of Overland Park*, 244 Kan. 257, 271, 767 P.2d 1290 (1989)])." *Zimmerman*, 289 Kan. at 949.

Incorporation of the concept of reasonableness distinguishes the standard of review applied in rezoning decisions from the general standard stated in K.S.A. 60-2101(d). The appropriateness of testing a decision for reasonableness is reinforced by Kansas statutes that incorporate reasonableness as the guiding factor in either a court's review of a zoning decision or in the zoning body's consideration of zoning issues. See, *e.g.*, K.S.A. 12-760 ("Within 30 days of the final decision of the city or county, any person aggrieved thereby may maintain an action in the district court of the county to determine the reasonableness of such final decision" regarding zoning.); K.S.A. 19-2964 ("Any person having an interest in property affected may have the reasonableness of any such act, regulation or amendment thereto determined by bringing an action against the board of county commissioners."). Importantly, reasonableness is incorporated into the statutes regarding airport zoning. K.S.A. 3-706(1) provides that "[a]ll airport zoning regulations adopted under this act shall be *reasonable* and none shall impose

any requirement or restriction which is not reasonably necessary to effectuate the purposes of this act." (Emphasis added.)

Even though the airport zoning statutes incorporate reasonableness as the guiding standard, there remains the distinction that the airport zoning judicial review provision—K.S.A. 3-709—differs from the judicial review provisions of general zoning statutes applied in *Golden*, 224 Kan. 591, and *Combined Investment Co.*, 227 Kan. 17, by providing for a "trial de novo as in civil cases." Nevertheless, the same separation of powers constraints that applied in *Golden* and *Combined Investment Co.* apply to our application of K.S.A. 3-709. Indeed, speaking generally of judicial review, we stated in *Frick* that

"even if a statute provides for de novo review, this court 'has almost universally applied this doctrine of separation of powers to various appeal statutes providing for appeals from purely administrative tribunals, ruling that the court may not substitute its judgment on questions of fact for that of an administrative tribunal.' [Citation omitted.]" *Frick*, 289 Kan. at 14.

Consequently, we conclude that the difference in wording in K.S.A. 3-709 does not require a different test than is applied in other rezoning cases. Rather, despite the de novo language in K.S.A. 3-709, the separation of powers doctrine requires Kansas courts to apply a highly deferential standard of review to the County's decision to disapprove the proposed rezoning. As noted, the standard of review as summarized in *Golden* and *Combined Investment Co.* is consistent with this highly deferential scope of review. In summary, we hold that the *Golden/Combined Investment Co.* standard of review is consistent with the concept of trial de novo as provided for in K.S.A. 3-709. Under rule 8 of the *Golden/Combined Investment Co.* standard of review, an appellate court applies the same standard. *Combined Investment Co.*, 227 Kan. at 28.

Issue 3: *Was the County's decision to disapprove the proposed rezoning entitled to a presumption of reasonableness that the landowners were required to overcome by proving that the County's action was unreasonable?*

The critical question for a court applying the *Golden/Combined Investment Co.* standard of review is whether the zoning decision is reasonable and, under rules 3 and 4, "[t]here is a presumption that the zoning authority acted reasonably" and "[t]he landowner has the burden of proving unreasonableness by a preponderance of the evidence." *Combined Investment Co.*, 227 Kan. at 28. Seeking to gain the advantage of the presumption, both the City and the County seek its application. The City argued before the district court that it was *the* zoning authority for the landowners' property. The district court accepted this argument, reasoning that the property had been zoned by the City before the enactment of K.S.A. 3-307e and, under the terms of that provision, "city zoned areas *shall keep such city zoning control.*" (Emphasis added.) "In general, the power to modify or amend a zoning ordinance or regulation rests in the body which had the power to adopt it in the first instance, which is, generally, the legislative or governing body of the municipality or other governmental entity." 101A C.J.S., Zoning and Land Planning § 67.

Nevertheless, as we have discussed, a political subdivision's planning and zoning power is derived from the grant contained in zoning statutes, and the legislature created an exception in K.S.A. 3-307e to the City's authority by requiring the County's approval. Because this exception applies in this case, the County claims to be the *final* zoning authority, which it claims makes it *the* zoning authority.

The landowners and the City argue that applying the presumption to the City's decision to approve the proposed rezoning is consistent with the prior litigation involving the subject property in which this court applied the presumption to the City's decision. *Board of Johnson County Comm'rs v. City of Olathe*, 263 Kan. 667, 952 P.2d 1302 (1998). However, in that case, this court did not reach the issue of how to treat the County's decision because the appeal occurred prior to the County's approval or disapproval of the proposed rezoning. Because that question had not been resolved in *Board of Johnson County Comm'rs*, the district court in this case understandably struggled with how to apply the previous case to the current circumstances where the rezoning application

was referred to the County and the County reached a decision contrary to the City's. In arguing how to apply the holding of the previous case, the parties argued for recognition of either the County or the City as *the* zoning authority, and the district court opted for recognizing the City as the authority. The result was that the County—rather than the landowners—was treated as the challenger and was required to carry the burden of production to establish that the City's decision was not reasonable.

Relying on *Combined Investment Co.*, 227 Kan. 17, the landowners argue this is the correct interpretation of the law. Contrary to this argument, however, *Combined Investment Co.* does not address the present situation where two political subdivisions have a role in the approval of the rezoning. Rather, in *Combined Investment Co.*, there was a single political subdivision—a county—with the zoning authority.

Indeed, the parties do not cite to nor have we have found a case discussing a situation similar to that created by K.S.A. 3-307e, where a zoning statute requires the approval of two political subdivisions but does not address what happens if there is a conflict in their decisions. Compare K.S.A. 3-307e (not addressing potential of conflicting decisions) with K.S.A. 3-704(2) (if multiple political subdivisions adopt airport zoning regulations "the more stringent limitation or requirement as to airport hazards shall govern and prevail"). Without guiding, much less binding, precedent, the parties and the district court attempted to hammer the square peg of dual authority into a round hole of sole authority by arguing for and adopting an either/or option. We conclude that, under the unique circumstances created by K.S.A. 3-307e, the shape of the hole has to change so that dual authority can fit. To make this accommodation, the district court should recognize both the City and the County as a zoning authority with the discretion to independently evaluate an application for rezoning.

In large part, we reach this conclusion because the plain language of the relevant statutes creates dual responsibilities and recognizes that the interests of the County are different from those of the City, even though both political subdivisions are making a zoning decision. On the one hand, the County has authority over

issues related to the development and zoning of property impacting the Airport. As recognized in *Higgins v. Johnson County Comm'rs*, 153 Kan. 560, 112 P.2d 128 (1941), the Airport was established when the federal government designated Johnson County as a site to receive federal funds to develop an airport as part of the national defense plan. The federal government placed certain stipulations on this effort, *Higgins*, 153 Kan. at 562-63, and has subsequently added requirements. In 1964, Congress enacted legislation, now codified at 49 U.S.C. § 47107 (2006), requiring airports to be able to make assurances that "appropriate action, including the adoption of zoning laws, has been or will be taken to the extent reasonable to restrict the use of land next to or near the airport to uses that are compatible with normal airport operations." See *Jankovich v. Indiana Toll Road Comm'n*, 379 U.S. 487, 494, 85 S. Ct. 493, 13 L. Ed. 2d 439 (1965) (discussing Federal Airport Act and 1964 amendments). Subsequently, the Kansas Legislature modified the statutes relating to the Airport, including adopting the provisions that were codified at K.S.A. 3-307a to 3-307e. L. 1967, ch. 10, secs. 7-11. With the adoption of K.S.A. 3-307e, the County and the Airport could meet the federal government's requirement regarding zoning restrictions. In addition, under K.S.A. 3-301 *et seq.*, the County is specifically charged with developing and maintaining the viability of the Airport, as well as considering zoning issues necessary for airport safety. For example, K.S.A. 3-306 states that the board of county commissioners is "authorized to operate and maintain and to make such reasonable rules and regulations governing the conduct and operation, maintenance and care of public airports as may be necessary for the best interests of the county and general public." See also K.S.A. 3-702 (preventing airport hazards).

On the other hand, the City is not charged with any responsibility regarding planning for the continued development of the Airport or for airport safety. Rather, as reflected in the City Commissioners' consideration of the rezoning application, the City's focus is on the orderly development of property within its jurisdiction. See K.S.A. 12-755 (governing body may adopt zoning regulations providing for such things as planned unit developments, transfer of

development rights, preservation of structures and districts, and control of aesthetics of redevelopment or new development).

The difference in focus raised by these responsibilities could lead the City to deny a rezoning application for reasons totally unrelated to the impact on the development and safe operation of the Airport. If that happened, a landowner could bring a judicial review action and, in that action, the City's determination would be entitled to a presumption of reasonableness. The County would not play a role in that scenario. Conversely, again without consideration of the impact on the development or safe operation of the Airport, the City might approve a proposed rezoning. But, under K.S.A. 3-307e, that approval would not be final until approved by the County, and the County might reject the proposed rezoning based on the considerations with which it is charged. Hence, fulfilling the differing roles, the City and the County could reach different decisions about whether to allow a rezoning and both decisions could be reasonable and consistent with each political subdivision's respective responsibilities. Yet, both decisions are essential to a final approval, and both governing bodies must be considered zoning authorities entitled to a presumption of reasonableness.

Seeking a different conclusion, the City argues that the County is not entitled to a presumption of reasonableness and must overcome the City's presumption of reasonableness because the County owns the Airport, i.e., the City seeks to put the County in the role of the landowner that bears the burden of production. However, the County's ownership of land has no impact on this case. Rather, the County's only involvement is as a zoning authority. The fact that the County owns the Airport does not change our analysis.

Instead, where a political subdivision is considering an amendment to a zoning or land use control resolution or ordinance, the political subdivision is not a challenger but the governing body charged with approving the change. Here, it is the landowners who have challenged the County's decision and, as such, the landowners should carry the burden of production in overcoming the presumption.

In summary, we hold that under K.S.A. 3-307e both the decision of the City and the decision of the County regarding a rezoning application are entitled to a presumption of reasonableness, and the landowners challenging the rezoning decision bear the burden to establish by a preponderance of the evidence that the challenged decision is not reasonable. See *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 (1980) (explaining effect of presumption and burden of production).

Issue 4: *Was the County's decision to disapprove the proposed rezoning lawful and reasonable?*

Having determined the appropriate standard of review and the application of the presumption of reasonableness, the parties urge us to apply the standard. The City and the landowners contend that the County's decision to disapprove the proposed rezoning was unlawful and unreasonable. The County also urges us to review its decision, although it suggests we find the County's decision to disapprove the zoning change was lawful, reasonable, and supported by substantial competent evidence.

The landowners contend we can easily affirm the district court's decision by applying a "negative finding" standard of review. Generally, this court's standard of review following a negative finding is that the party challenging the finding must prove the factfinder arbitrarily disregarded undisputed evidence or was affected by some extrinsic consideration such as bias, passion, or prejudice. *Nance v. Harvey County*, 263 Kan. 542, 550, 952 P.2d 411 (1997). The landowners argue this is the appropriate standard because the district court found that the County failed to meet its burden of overcoming the City's presumption of reasonableness. We reject this as our standard of review, however, because the district court erroneously imposed the burden of production on the County by requiring the County to overcome the City's presumption of reasonableness. Consequently, the district court's finding cannot serve as the starting point for our analysis and the negative finding standard of review cannot be applied.

Instead, as previously discussed, our role should be to review the district court's application of the *Golden/Combined Invest-*

*ments Co.* standard of review to the County's decision. However, the closest the district court came to examining the County's decision in light of the *Golden/Combined Investments Co.* principles was in stating:

"[T]he resolution of the County and the County resolution is in conclusory language. The Court finds [the proposed county resolution] does not meet the requirement of *Golden*, and its following case law in the sense that case law somewhat softens the effect of *Golden* and permits the Court to refer to the record to provide details to support a governing body's resolution or ordinance approving or denying zoning."

The district court did not conclude that the record was inadequate or that review of the factors could not occur, however. Rather, the district court's focus was on whether the County had overcome the presumption that the City's decision to approve the proposed rezoning was reasonable.

Because we depart from the district court's analysis at this point, we essentially begin anew. In doing so, we not only apply a different standard of review but, in contrast to the district court's imposition of the burden of production on the County, we impose the burden of production on the landowners.

Despite this change in standard and burden, the parties argue we can resolve the issue of reasonableness because, in zoning cases, that question is one of law. *Combined Investment Co.*, 227 Kan. at 28. We do not quarrel with this general principle and recognize that there may be some judicial efficiency involved if we were to merely resolve the issue of reasonableness, especially since that question has been briefed as an alternative argument. Yet, we decline to do so because, as stated, our rulings in this case mean that we would impose a different burden of proof, apply a different test, and employ a different scope of judicial review than did the district court. In other words, we would be conducting a trial de novo, a task that is statutorily assigned to the district court. If we were to assume that role, we would not only alter the statutory scheme, but we would also preempt any right to meaningful appellate review of a resulting judgment. Consequently, we conclude that this matter must be remanded to the district court for findings regarding the reasonableness of the County's decision, including a

finding of whether the landowners satisfied the burden of overcoming the County's presumption of reasonableness.

Issue 5: *Did the district court err in denying the County's motion to stay the district court's rezoning ruling pending this appeal?*

Finally, the County argues that the district court erred in denying its motion to stay the court's March 16, 2009, journal entry of judgment, which incorporated the court's order to publish the city rezoning ordinance, pending this appeal. Our decision to reverse the district court means that the proposed rezoning has not been approved by the County and, therefore, the City's ordinance is not valid. Consequently, the district court erred in ordering the publication of the City's ordinance, and the remaining issues regarding the validity of the ordinance are moot.

Reversed and remanded.

CAPLINGER, J., assigned.